SYRACUSE SAVINGS BANK, Plaintiff, *v.* CHARLES H. MERRICK et al., as Executors of JAMES TOLMAN, Deceased, Appellants, and THE SALT SPRINGS NATIONAL BANK OF SYRACUSE, Respondent, Impleaded with Others.

ASSIGNMENT OF BOND AND MORTGAGE — FAILURE TO DELIVER BOND TO SECOND ASSIGNEE THEREOF SUFFICIENT TO PUT SUCH ASSIGNEE UPON INQUIRY — INSUFFICIENT EVIDENCE TO SUSTAIN FINDING OF DUE DILIGENCE. Where the holder of a bond and mortgage assigned them as security for a loan, delivering the bond to the assignee but retaining possession of the mortgage, and afterward, and before such assignment had been recorded, assigned the same bond and mortgage, together with others, to another assignee, for value, delivering the mortgage without the bond, the failure to produce the bond was sufficient to put the second assignee upon inquiry, and if unexplained to operate as a notice of the defect in the assignor's title; and where the only evidence of inquiry on the part of the assignee is that its attorney spoke about the absence of several of the bonds to the assignor, who responded, "Well, if any of

them are missing, they are doubtless in my office and I will have them looked up and * * * hand them in," and that the assignee's attorney also took an affidavit from the assignor that he owned the securities, such evidence not only fails to show due diligence on the part of the assignee, but discloses an entire failure to exercise diligence; a finding of the trial court, therefore, that the second assignee had no actual notice of the first assignment and took its assignment in good faith and for value must be reversed.

*Syracuse Savings Bank* v. *Merrick*, 96 App. Div. 581, reversed.

(Argued June 12, 1905; decided October 3, 1905.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 20, 1904, affirming a judgment in favor of plaintiff and the Salt Springs National Bank entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George D. Chapman* for appellant. The bank's title must fail, because it is not a *bona fide* purchaser without notice. (*Tuttle* v. *Jackson*, 6 Wend. 226; 1 Story's Eq. Juris. § 400; *Grimstone* v. *Carter*, 3 Paige, 421; *Jackson* v. *Post*, 15 Wend. 588; *Brown* v. *Blydenburgh*, 7 N. Y. 141.) There is no evidence to sustain the finding that the Salt Springs National Bank was a purchaser in good faith. (*Kellogg* v. *Smith*, 26 N. Y. 18; *Brown* v. *Blydenburgh*, 7 N. Y. 141; *Merritt* v. *Bartholick*, 36 N. Y. 44.)

*Will B. Crowley* and *Ceylon H. Lewis* for respondent. The question of whether the bank had actual or constructive notice of Tolman's claim and whether it made due inquiry is one of fact. The findings of the trial court upon those propositions are conclusive upon this court. (*Williamson* v. *Brown*, 15 N. Y. 354; *Hawkins* v. *M., etc., Co.*, 178 N. Y. 236.) The bank had no actual notice of Tolman's claim. Mere failure to get the bond did not charge it with constructive notice thereof. At most, the absence of the bond imposed upon the bank only the duty of inquiry, which duty

1905.]    Syracuse Savings Bank *v.* Merrick.    **389**

N. Y. Rep.]    Opinion of the Court, per Cullen. Ch. J.

it fully discharged by questioning Warner and by getting his written statement. (*Davies* v. *Jones*, 29 Misc. Rep. 253; *Purdy* v. *Huntington*, 42 N. Y. 335; *Williamson* v. *Brown*, 15 N. Y. 354; *Brown* v. *Blydenburgh*, 7 N. Y. 141.)

Cullen, Ch. J. The action was brought to foreclose a mortgage held by the plaintiff on certain real estate situate in the city of Syracuse. No defense was interposed to the plaintiff's claim, but two of the defendants, each claiming to be the holder of a mortgage on the land subsequent to that of the plaintiff, sought to have their respective titles adjudicated in the action. No question has been made as to their right to inject such an issue into the suit, and we shall raise none, though it may be doubted whether the plaintiff should have been delayed in the enforcement of its claim to await the settlement of a dispute in which it had no interest. The facts out of which the controversy arose are as follows : The owners of the property, subject to the plaintiff's mortgage, executed on August 2, 1895, a bond and mortgage to one Warner to secure the sum of $8,398.92, borrowed from him, which last mortgage covered the premises in suit and others. On the same day Warner, to secure payment of a loan of $3,500, executed and delivered to the appellants' testator, Tolman, an assignment of said bond and mortgage. At the same time Warner delivered the bond to Tolman but retained possession of the mortgage. The assignment to Tolman was not recorded until November 12th, 1902. On May 16th, 1900, Warner assigned for value said bond and mortgage with others to the respondent, the Salt Springs Bank, which assignment was recorded on May 20th, 1901. Warner delivered to the respondent the mortgage but not the bond, which which was in the possession of Tolman. The trial court found that the respondent had no actual notice of the assignment to Tolman and took its assignment in good faith and for value; that while the respondent did not receive the bond, it made due and diligent inquiry as to the rights of other persons to the bond and mortgage, and did not discover that the

defendant Warner had not full right to assign the same. On these facts the trial court awarded the bond and mortgage to the bank. That judgment has been affirmed by the Appellate Division by a divided court. From that judgment this appeal was taken.

The appellants contend that the Recording Act, on the strength of whose provisions title to the bond and mortgage has been awarded to the respondents, does not apply to the present case or affect the rights of the prior assignee of a bond and mortgage whose assignment is not recorded as against a subsequent assignee who records his assignment. It has been decided that an assignment of a mortgage is a conveyance of real estate within the meaning of the Recording Act. ( *Westbrook* v. *Gleason*, 79 N. Y. 23; *Decker* v. *Boice*, 83 N. Y. 215; *Bacon* v. *Van Schoonhoven*, 87 N. Y. 446; *Gibson* v. *Thomas*, 180 N. Y. 483.) But in nearly all the cases the question arose, not with reference to the rights of rival claimants to the security, but in regard to the rights of subsequent purchasers or lienors on the land itself. The only case in which the question now before us was presented to this court is that of *Kellogg* v. *Smith* (26 N. Y. 18), in which the question was not determined, the decision proceeding on another ground. The difficulty in disposing of the question is inherent in the nature of the security. On the one hand, it is contended that as the mortgage is merely collateral or incident to the debt, and as there is no provision for the recording of any assignment of the bond, which is the principal obligation, an assignee's title to the debt or obligation cannot be impaired by the failure to record the assignment, nor can the mortgagor be subjected to a double obligation, to wit, to have his land foreclosed under the mortgage and to be held personally responsible on the bond. This view is strongly presented in the dissenting opinion below. On the other hand, it is contended that by the Recording Act it was intended to confer a *quasi* or limited negotiability on bonds and mortgages, and that to accomplish this result it must be held that the title to a bond or evidence of debt to secure

which a mortgage is given will be defeated by failure to comply with the provisions of the Recording Act as to assignments of mortgages, whatever may be the rule as to the assignment of other obligations. The question is a broad one. In our view, however, its decision is not necessary to a determination of this case, and, therefore, we leave it open.

As already stated, the learned trial court found as a fact that the respondent made due and diligent inquiry; that it had no notice of the rights of Tolman to the bond and mortgage, nor was it able to discover the same. As the decision of the Appellate Division was not unanimous the finding is open to examination by this court and we are of opinion that there is no evidence to sustain it. The failure of Warner to produce the bond at the time of the assignment was sufficient to put the respondent on inquiry and if unexplained to operate as notice of the defect in Warner's title. (*Brown* v. *Blydenburgh*, 7 N. Y. 140; *Kellogg* v. *Smith*, *supra*; *Merritt* v. *Bartholick*, 36 N. Y. 44; *Bergen* v. *Urbahn*, 83 N. Y. 49.) The only evidence of inquiry or diligence on the part of the respondent is that given by the lawyer who acted for it in procuring the assignment. He testified that upon his discovery that several of the bonds were not delivered to him with the mortgages he called the attention of the officers of the bank to that fact and spoke to Warner about it, to which Warner responded: "Well, if any of them are missing they are doubtless in my office and I will have them looked up and furnish them to the bank — hand them in." He also took an affidavit from Warner that he owned the securities. With this the subject was dropped and nothing further was done. Now, so far from this showing due diligence on the part of the assignee, we think it discloses an entire failure to exercise diligence. The learned counsel for the respondent relies on the case of *Munoz* v. *Wilson* (111 N. Y. 295) as an authority for the proposition that where the mortgage itself contains a covenant to pay the debt the production of a bond is not necessary. In that case, however, it was proved that while the mortgage referred to a bond, in fact no bond had ever been given. In the present

case, however, the respondent was expressly told that the missing bonds were in the assignor's office. After that statement common prudence would have dictated that the assignor be required to produce and deliver the bonds. If on such demand he failed to deliver them, that failure itself would create suspicion. It is argued that if the demand had been made the assignor would have made some other excuse for his failure to produce the missing security. This does not follow, even if we assume the assignor to have acted dishonestly in the transaction. The assignor, however, testified on the stand that at the time of the assignment to the bank, which was one of great excitement on his part, he turned over all his securities to satisfy the bank's claim against him as an indorser and that he forgot that he had previously transferred the mortgage to Tolman. If this statement is to be credited it may very well be that Warner, on discovering that the bond was not in his possession, would have recalled the transfer to Tolman and have refused to assign it to the bank. However this may be, it is no answer to the failure of the bank to make proper inquiry and to obtain the bond to assert that if it had the assignor would have told plausible falsehoods to account for his failure to deliver the bond. This might or might not have proved the case. We cannot speculate on it. The same argument was made before the Supreme Court of Massachusetts in *Shaw* v. *Spencer* (100 Mass. 382), where a security was registered in the name of A, trustee, and transferred to the defendant for the trustee's personal benefit. It was urged that the defendant was relieved from making inquiry of the trustee as to the nature of his interest because the trustee would doubtless have told a falsehood on the subject. It was held that there was no such presumption and that even if such conduct on the part of the trustee was probable it did not relieve the assignee from the duty of making inquiry. The case before us is stronger for the appellant than that of *Kellogg* v. *Smith* (*supra*). In that case the assignor stated to the assignee that the bond and mortgage which he failed to produce were locked up in the safe of his agent who,

at the time, was away. It was held that despite this excuse the non-production of the bond and mortgage was sufficient notice to deprive the assignee of the benefit of the Recording Act. In the present case, if the story told by Warner to the bank's lawyer had been true, the bond was immediately accessible.

The judgment of the Appellate Division and that part of the judgment of the Special Term appealed from should be reversed and a new trial granted, costs to abide the event.

GRAY, O'BRIEN, BARTLETT, HAIGHT, VANN and WERNER, JJ., concur.

Judgment reversed, etc.