CULLEN, Ch. J., GRAY, HAIGHT, VANN, HISCOCK and COLLIN, JJ., concur.

Judgment of conviction affirmed.

---

ASSETS REALIZATION COMPANY, Respondent, *v.* FRED CLARK, Appellant, Impleaded with Others.

Mortgage — payment — payment of negotiable note secured by mortgage which has been assigned but assignment not recorded — when payment to original holder will not discharge mortgage — rights and equities of parties to transaction.

1. Where a negotiable instrument is secured by a mortgage the latter will not be discharged by payment to the record holder if, as a matter of fact, the note and mortgage had already been transferred to a *bona fide* holder for value before maturity even though no assignment has been recorded.

2. In the case of another than the mortgagor, as for instance the purchaser of the equity of redemption, a record of an assignment of a mortgage is constructive notice to one desiring to make a payment on the mortgage.

3. Where a party makes what is treated as a final payment in satisfaction of a bond and mortgage without taking a satisfaction and without requiring production of the instruments or receiving some sufficient excuse for their non-production, the payment is at his peril and not good as against an assignee for value under an unrecorded assignment.

4. *It seems*, that the rule applied to a final payment would not necessarily be applicable to a partial payment of principal or a payment of interest and that the payer in such latter cases would not always be under obligation to call for the production of the bond,

neither is it determined that a party making a final payment would not be protected as against an unrecorded assignment if when he made his payment he took a satisfaction piece of the bond and mortgage, although without production of the latter, and placed the same on record before the assignment was recorded.

*Assets Realization Co.* v. *Clark,* 137 App. Div. 881, affirmed.

(Argued December 12, 1911; decided March 26, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 27, 1909, affirming a judgment in favor of plaintiff entered upon a decision of the Erie County Court on trial without a jury in an action to foreclose a mortgage upon real property.

September 2, 1902, Henry A. Clark and Cornelia, his wife, gave their note for $600 to one Foss payable three months after date. On the same day they executed and delivered to him a bond conditioned for the payment of $600 three months after date, and a mortgage to secure the payment of said bond. While said bond and mortgage were really given to secure the payment of said note, this was not in any way stated in the instruments themselves. Some payments were made on said note and renewals given from time to time until August 3, 1903, when the final note was given for the sum of $375 payable one month after date.

On said last-mentioned date Foss made and delivered to the German Bank of Buffalo his own note for $375 payable three months after date, and assigned to the bank as collateral security for the payment thereof the note, bond and mortgage executed by the Clarks to him as aforesaid. The Foss note was renewed from time to time until November 28, 1904, when a final note was given for the sum of $370 payable ten days after date.

December 22, 1904, a judgment was entered dissolving the German Bank and appointing one Wheeler receiver of its assets, and some time thereafter, the date not

appearing in the findings, the latter sold and transferred to the plaintiff in this action the note dated November 28, 1904, for $370 made by Foss and also the Clark note, bond and mortgage held as security therefor. No assignment to the bank of the Clark instruments was recorded until February ·9, 1906, and the assignment from the bank to plaintiff was not recorded until one day later.

April 18, 1905, the mortgagor named in the above-mentioned mortgage, Cornelia A. Clark, sold and conveyed the premises described therein to the appellant, the deed being recorded two days thereafter.

It is the claim, and if we look at the evidence it substantiates the claim, that it was the arrangement between the grantor and the grantee in said conveyance that the former should pay the indebtedness secured by the Foss mortgage down to $200 and that the grantee should pay the balance as part of the purchase price. The mortgagors prior to the conveyance did pay $163 to apply on their indebtedness secured by the mortgage, and did secure from Foss the following statement, which was delivered to the appellant, viz.:

"BUFFALO, N. Y., *April* 22, 1905.
"To C. A. CLARK:
" This is to state that you are owing me on account of mortgage for $600.00 given September 3rd, 1902, the sum of $200 (Two Hundred Dollars). When that sum is paid I will release the same, the debt being paid.
"CHARLES E. FOSS."

It will be noted that this statement is dated four days after the execution and delivery of the deed to appellant as found by the trial judge.

Subsequently appellant paid to Foss $202 as full payment and satisfaction of the bond and mortgage. When making this payment he did not know that the bond and mortgage had been assigned or that they were in fact executed as security for a note and he did not through

his agent call for the production of the bond and mortgage or inquire as to their ownership or whereabouts or demand any satisfaction thereof. His son, who made the payment, testifies that he paid $202 to the mortgagee and "explained to him that Magavern would come out and take his acknowledgment to the discharge in a few days. There was no notary or commissioner there to take the acknowledgment at the time. I told him that Magavern would be up to take his acknowledgment to the transfer and he said 'All right, any time.' " He further testifies: "I did not ask Mr. Foss to show me the mortgage or to show me any papers. I didn't ask him anything about where the papers were."

It was found by the trial court that there was due on the bond and mortgage a sum considerably in excess of the $200 and interest from the date of the statement made by Foss as aforesaid.

*Frank C. Ferguson* for appellant. A payment upon a bond and mortgage made by a mortgagor to the mortgagee, after an assignment thereof by the latter, but without notice, actual or constructive, of the assignment is valid. (*Van Kuren* v. *Corkins,* 66 N. Y. 77; *Barnes* v *L. I. R. E. Co.,* 88 App. Div. 83; *Bacon* v. *Van Schoonhoven,* 87 N. Y. 446; *Heermans* v. *Ellsworth,* 64 N. Y. 159; *Wagner* v. *Grimm,* 169 N. Y. 428; *Stoddard* v. *Gailer,* 90 N. Y. 575; *Yeoman* v. *McClenahan,* 190 N. Y. 121; *Union College* v. *Wheeler,* 61 N. Y. 88.) The record showed to the appellant that Foss still owned the mortgage and the appellant was protected by the Recording Act in making the payment to him. (*Gibson* v *Thomas,* 180 N. Y. 483.)

*Warren Tubbs* and *Adon W. Crosby* for respondent. The trial court properly refused to allow any alleged payments made by Cornelia A. Clark and Henry A. Clark, mortgagors, to Foss, mortgagee, after the date of the

assignment of the mortgage debt. (Thomas on Mort. [2d ed.] § 308; Daniel on Neg. Inst. [4th ed.] § 834; *Carpenter* v. *Longan,* 16 Wall. 271; *Gould* v. *Marsh,* 1 Hun, 566; *C. P. Co.* v. *State Bank,* 134 Fed. Rep. 538.) Payments alleged to have been made by Fred Clark, grantee of the mortgaged premises, to Foss, mortgagee, could not be allowed here, even though the principal had been represented by a non-negotiable instrument. (*Campbell* v. *Vedder,* 3 Keyes, 174; *Purdy* v. *Huntington,* 42 N. Y. 334; *Curtis* v. *Moore,* 152 N. Y. 159; *Kellogg* v. *Smith,* 26 N. Y. 18; *S. S. Bank* v. *Merrick,* 182 N. Y. 387; Thomas on Mort. § 355.)

HISCOCK, J.    On the facts set forth in the foregoing statement two propositions have been advanced by the appellant, one of them being argued at some length.

The first one is that the statement made by Foss as to the amount due on the mortgage at about the time appellant was purchasing the premises was conclusive both as to him and as to his assignee by a prior but unrecorded assignment. This proposition may be dismissed without consideration on the merits. The effectiveness of such a statement on any view is dependent on the element of estoppel whereby a party would be prevented from enforcing the mortgage at a greater amount than was stated to be due thereon, as against a grantee who had purchased on the faith of the statement. As already pointed out it appears that the deed to appellant was executed before the statement was given and, therefore, there can be no estoppel. Other evidence in the case makes me think that quite probably the finding as to the date of execution of the deed is erroneous and that as a matter of fact the statement was given before the deed was executed. The appellant, however, does not seem to find any fault with the findings in this respect and they have been unanimously affirmed.

We then come to the second proposition that appel-

lant's payment to the mortgagee is good as against a prior unrecorded assignment to respondent and his assignor, the German Bank.

Two answers are made by respondent to this contention. The first one is that the bond and mortgage were really executed as security for a negotiable note and that they followed the note when it was transferred by Foss to the bank and later by the bank to the plaintiff and that certainly a payment on a negotiable note to a former holder thereof is not good as against one to whom it has been transferred, whatever may be the rule as to a non-negotiable instrument.

It may be regarded as the rule that where a negotiable instrument is secured by a mortgage the latter will not be discharged by payment to the record holder if as a matter of fact the note and mortgage had already been transferred to a *bona fide* holder for value before maturity even though no assignment has been recorded. (Thomas on Mortgages [2d ed.], sect. 308; *Biggerstaff* v. *Marston,* 161 Mass. 101; *Jones* v. *Smith,* 22 Mich. 360; *Williams* v. *Keyes,* 90 Mich. 290.)

In this case the mortgage and bond did not disclose and the appellant did not know that they were security for a note. In addition the findings do not show whether the note or other instruments were transferred to the respondent before or after the payment was made, and they do make it pretty certain that the transfer was made after the maturity of the note. Under these circumstances I doubt the application of the rule.

But, even so, I think that the payment made by appellant to Foss after he had parted with the note and bond and mortgage was unavailing as against the assignee although the latter's assignment had not been put on record.

The provisions of the Recording Act are not controlling in disposing of this question. That act concededly provides for the recording of assignments of mortgages, but

it also expressly provides that such recording shall not be of itself notice of such assignment to a mortgagor, his heirs or personal representatives, so as to invalidate a payment made by either of them to the mortgagee. (Real Property Law, § 271, now 324.) While expressions seeming to indicate a contrary view have sometimes been used in the opinions, I think we must regard it as settled that in the case of another than the mortgagor, as for instance the purchaser of the equity of redemption, a record of an assignment of a mortgage is constructive notice to one desiring to make a payment on the mortgage. (*Viele* v. *Judson*, 82 N. Y. 32; *Brewster* v. *Carnes*, 103 N. Y. 556, 563.)

In the latter case it appeared that one Carnes was the purchaser of the equity of redemption in premises subject to a mortgage. He had made payments to one Taylor after the latter had assigned the bond and mortgage to one Webster by an assignment which was recorded before the payments. Under these circumstances, Judge MILLER said: "Under the Recording Act, therefore, Carnes was chargeable with notice that the mortgage, which he intended to pay, had been assigned by Taylor to another party, * * * who subsequently assigned her ·rights therein to the plaintiff. The record of an assignment of a mortgage is constructive notice to all persons of the rights of the assignee, save as excepted by the statute. * * * The record of the assignment here, as in the case cited, was an ample protection to the plaintiff's claim and notice to Carnes that Taylor had disposed of his interest in the mortgage."

This case seems to have been cited with approval in *Larned* v. *Donovan* (84 Hun, 533, 536; *S. C.*, 155 N. Y. 341, 342); *Armstrong* v. *Combs* (15 App. Div. 246, 250). (See, also, *Smyth* v. *Knickerbocker Life Ins. Co.*, 84 N. Y. 589, 593; *Ely* v. *Scofield*, 35 Barb. 330; *Belden* v. *Meeker*, 47 N. Y. 307, 312, 313.)

But if we should be tempted to hold as a logical con-

verse of this rule, that in the absence of such record of an assignment or other direct notice, the purchaser might safely pay to the assignor, we should find ourselves confronted with a preponderance of authority preventing such view under the facts existing in this case. The payment relied on by the appellant was regarded and treated by him and by the record holder of the bond and mortgage as a final payment fully discharging the mortgage. When he made the payment he did not take any satisfaction of the bond and mortgage, did not ask for their production or even as to their whereabouts, but made his payment blindly and simply with the statement that at a later day his attorney would call for the purpose of obtaining a satisfaction. Such conduct did not rise to ordinary prudence, and rendered his intended payment unavailing as against the assignee.

Where a party makes what is treated as a final payment in satisfaction of a bond and mortgage without taking a satisfaction and without requiring production of the instruments, or receiving some sufficient excuse for their non-production, the payment is at his peril and not good as against an assignee for value under an unrecorded assignment. The reason for this rule lies outside of the Recording Act, and is found in the fact that on such final and full payment, at least if no formal satisfaction is taken, it is so far the ordinary rule to produce and deliver up the instrument which is being paid and satisfied that the failure to do this in the absence of sufficient explanation and excuse is a circumstance calculated to put the payer on inquiry and lead him to ascertain the true ownership.

In *Brown* v. *Blydenburgh* (7 N. Y. 141) the mortgagor conveyed the land covered by the mortgage to a known assignee for the purpose of satisfying the mortgage. Prior to this conveyance, such assignee had made a further assignment of the bond and mortgage, and the last assignee had again assigned them, neither of the last two

assignments being recorded. The assignee to whom the land was conveyed executed a certificate of discharge of the mortgage, but did not have the bond and mortgage in his possession at the time, and there was neither allegation nor proof that the mortgagor made any inquiry of him for the bond and mortgage, or that any misrepresentation was made by him with reference to their ownership or possession.

Under the circumstances a decree of foreclosure and sale was made, and on appeal this decree was affirmed, the court saying: "There are circumstances in the case which ought to have put Blydenburgh upon inquiry as to Atwell's right to discharge the mortgage debt. The bond and mortgage were not in his possession at the time the certificate of discharge was given. * * * There is neither allegation nor proof that Blydenburgh made any inquiry of Atwell for the bond and mortgage, or that any misrepresentation was made by Atwell on that point. In the common and usual course of business, Atwell, if he had been the owner of the bond and mortgage, would have delivered them to Blydenburgh when the satisfaction was acknowledged; and it is against all probability that Blydenburgh would have paid the debt either in money or by a conveyance of the land without inquiry for his bond. That inquiry would have resulted either in a discovery of the fact that the securities had been previously assigned by Atwell, or in a misrepresentation made by him of the true state of the case. Such a misrepresentation might have excused Blydenburgh. It would have been evidence of his good faith in taking the discharge. His answer not being on oath, is not evidence in his favor, and the circumstances referred to raise a presumption against him which he was bound to remove by proof. This he has not done." (p. 145.)

This case was cited without criticism on this point in *Bacon* v. *Van Schoonhoven* (87 N. Y. 446), and the rule

8

laid down by it is apparently recognized in *Stoddard* v. *Gailor* (90 N. Y. 575, 579).

It is true that in the *Brown* case the payment was by the mortgagor of his own obligation and, therefore, the propriety of his taking it up was more pronounced than in a case like the present where payment was attempted of the obligation of another. I think, however, that this is a matter merely of degree and that the principle is applicable in the latter case.

In *Gillig* v. *Maass* (28 N. Y. 191) a person in taking a mortgage relied on an agreement by the record holder of a prior mortgage that the latter should be subordinated in a certain amount to the new mortgagee. As a matter of fact the prior mortgagee had assigned his instrument by an unrecorded assignment, and in holding that the agreement was not good as against the assignee the court said: "No statement was made or act done by her (the assignee) which misled or deceived Jones as to the ownership of the Walber bond and mortgage; and he took the agreement from Walber without requiring the production, at the time, of the papers."

In *Kellogg* v. *Smith* (26 N. Y. 18) it was held that the purchaser of a bond and mortgage who fails to require the production of the bond is put on inquiry and chargeable with notice of a prior assignment, and deprived of the protection given by the recording acts to purchasers without notice.

In *Purdy* v. *Huntington* (42 N. Y. 334) it appeared that a bond and mortgage had been executed June 4, 1855, and soon thereafter an assignment thereof made which was not recorded until February 19, 1864. In the meantime the mortgagor conveyed the premises to the mortgagee, who thereafter and prior to the record of the assignment sold and conveyed the same to one Huntington, who paid a good and valuable consideration therefor. Huntington had no actual knowledge or information as to the existence or assignment of said mortgage when he

took his deed, and in the foreclosure action claimed that the mortgage was merged by the conveyance from the mortgagor to the mortgagee while the latter held the record title to the mortgage, and that, therefore, the mortgage was discharged and had ceased to be a lien, and that he was protected as a *bona fide* purchaser of the mortgaged premises without notice of the assignment of the mortgage. It was held that this defense could not stand; that as a matter of fact the mortgagee having assigned the mortgage before the conveyance of the premises to him there was no merger, and that Huntington was not sustained in his claim of a merger as to him by the fact that the assignment of the mortgage had not been recorded. The court said: "It is conceded that he is to be charged with constructive notice of the existence of the mortgage, and of the continuance of its lien, by its record in the proper office. By that he was informed not only of the date of the mortgage, the amount secured thereby, and of all its particulars, but that it was open and uncanceled of record, and therefore apparently an outstanding lien and incumbrance on the premises of which he was taking title. Having that information, he knew or was at least chargeable in law with the further notice, that it was such lien and incumbrance in the hands of any person to whom it had been legally transferred, and that the record of such transfer was not necessary to its validity, nor as a protection against a purchaser of the property mortgaged or any other person than a subsequent purchaser in good faith of the mortgage itself. or the bond or debt secured thereby.   *   *   *   That knowledge and notice made it his duty in the exercise of proper diligence, to inquire whether   *   *   *   his vendor, was still the owner and holder of the mortgage, and his omission to make that inquiry deprives him of the protection of a *bona fide* purchaser." (p. 338.) And amongst other cases cited in support of this decision is that of *Brown* v. *Blydenburgh* (*supra*).

Practically the same situation was presented in the case of *Curtis* v. *Moore* (152 N. Y. 159). There the defendant in a foreclosure action had purchased land from a mortgagee to whom the premises had been conveyed by the mortgagor while he was the record holder of the bond and mortgage but of which as a matter of fact an assignment had already been made. The grantee defended on the ground that he was a *bona fide* purchaser without notice of the assignment and had relied on the apparent merger and satisfaction of the mortgage. It was held that this defense could not be sustained. The case of *Purdy* v. *Huntington* was cited and quoted from, and Judge VANN for the court further said: " Mr. Moore was not a *bona fide* purchaser within the principle established by those authorities (citing them) because the record of the mortgage was notice to him that the mortgage was outstanding and unsatisfied, and it was no concern of his who happened to be the owner at the time. In dealing with the property on the assumption that Edward S. Curtis (the mortgagee) still owned the mortgage, he acted at his peril and assumed the risk that Curtis might have transferred the mortgage to some one else. He was put upon his inquiry, and it was not enough for him to examine the record and see that no assignment of the mortgage appeared thereon, but he should have required a satisfaction piece in due form or the delivery of the mortgage and note.   *   *   *   He did not do this, however, but accepted title with constructive notice of an uncanceled mortgage, recorded and outstanding, without making inquiry or requiring the production of the mortgage itself, or the note that it was given to secure." (p. 163.)

In *Syracuse Savings Bank* v. *Merrick* (182 N. Y. 387) a contract arose between two claimants by purported assignment of the same bond and mortgage. The original holder of the bond and mortgage assigned them as security for a loan, delivering the bond and the assign-

ment but retaining possession of the mortgage, and afterwards and before such assignment had been recorded he assigned the same bond and mortgage together with others to another assignee for value, delivering the mortgage without the bond, giving as his excuse for non-production of the bond that it was doubtless in his office and he would have it looked up and handed in and furthermore making an affidavit that he owned the securities.

It was held under these circumstances that the second assignee, not receiving the bond, failed to show due diligence and that a finding to the contrary should be reversed. Chief Judge CULLEN, writing in behalf of the court, said: " The failure of Warner to produce the bond at the time of the assignment was sufficient to put the respondent on inquiry and if unexplained to operate as notice of the defect in Warner's title " (p. 391), citing amongst other cases *Brown* v. *Blydenburgh* (*supra*), and then writing as already indicated that the excuse given by Warner for not producing the bond was not sufficient.

As stated, the plain principle underlying and affirmed by all of these decisions is that when a party makes a payment, or completes a transaction intended like a merger to operate as a payment, in full discharge of a bond and mortgage, or takes a transfer thereof, the evidence of the debt naturally and ordinarily is produced and delivered, and, therefore, the failure to do this in the absence of sufficient explanation constitutes notice which makes the payment or transaction unavailing as against a prior assignment although unrecorded.

The cases of *Van Keuren* v. *Corkins* (66 N. Y. 77) and *Bacon* v. *Van Schoonhoven* (87 N. Y. 446), relied on by the appellant as establishing a contrary doctrine, do not fairly fulfill that purpose. In the former case credit was claimed for payments made by the mortgagor to the mortgagee without knowledge of an unrecorded assignment. It was held that want of good faith was not to be inferred because the bond and mortgage were

not produced or inquiry made concerning the same when the payments were made. Some rather general statements are made in the opinion. But as sustaining the decision it is to be noted that the payments were made by the mortgagor, who came within the express protection of the statute already quoted providing that even the recording of an assignment shall not be notice of the same to a mortgagor so as to invalidate any payment made, and even more important than this, it was found by the trial judge on sufficient evidence that at the time the payments were made to one of the mortgagees he had possession of the bond, and, therefore, undoubtedly the mortgagor in making the payments was entitled to credit for the facts which he would have ascertained by inquiry, namely, that the mortgagee to whom he was making them was in possession of, and, therefore, could produce the bond.

The case of *Bacon* v. *Van Schoonhoven* simply established that one who takes a conveyance or mortgage of real estate relying on a formal satisfaction of a prior mortgage made by a third party has no occasion to call for the production of the mortgage which has been satisfied or of the bond, and, therefore, may rely on a satisfaction which is produced to him executed by the record holder of the prior mortgage. This case in addition involved the application of the Recording Act.

We do not desire to be regarded as holding that the rule applied in this case to a final payment would necessarily be applicable to a partial payment of principal or a payment of interest and that the payer in such latter cases would always be under obligation to call for the production of the bond. While that question is not here for decision, it is apparent that quite different reasoning might be applied to the case of full and final payment and to that of one which was only partial and did not entitle the payer to surrender of the instruments. (*Foster* v. *Beals*, 21 N. Y. 247, 251, 252.)

Neither do we intend to determine that appellant would not have been protected as against the unrecorded assignment if when he made his payment he had taken a satisfaction piece of the bond and mortgage, although without production of the latter, and had placed the same on record before the assignment was recorded.  While that question strictly is not here and, therefore, cannot be decided, there are strong reasons for saying that in such case appellant would have been protected by the Recording Act.

Section 241 (now 291) of the Real Property Law, after providing for the recording of a "conveyance of real property," enacts, "Every such conveyance not so recorded is void as against any subsequent purchaser in good faith and for a valuable consideration, [from the same vendor, his heirs or devisees] of the same real property or any portion thereof, whose conveyance is first duly recorded."  There is some question whether the words in brackets are in force.  While chapter 547, Laws of 1896 (Real Property Law), enacted the section in full as above printed and repealed that portion of the Revised Statutes containing the section then substantially being reproduced, except that the bracketed words were added, at the same session of the legislature was passed chapter 572, which amended the section of the Revised Statutes which had been repealed by the Real Property Law, and thereby, I suppose, re-enacted it without the words in question.

Section 240 (now 290) of the Real Property Law has defined the term "conveyance" as including "every written instrument, by which any estate or interest in real property is created, transferred, mortgaged or assigned, or by which the title to any real property may be affected," etc.

Under this definition it has been held that an instrument in satisfaction of a mortgage is a conveyance within the protection of the Recording Act.  (*Bacon* v. *Van Schoonhoven*, 87 N. Y. 446, 449; *Brewster* v. *Carnes*, 103 N. Y. 556, 562; *Baker* v. *Thomas*, 61 Hun, 17.  See,

also, *Decker* v. *Boice*, 83 N. Y. 215, 220, 221; *Frear* v. *Sweet*, 118 N. Y. 454, 464.)

In said section 240 the term "purchaser" is defined as including "every person to whom any estate or interest is conveyed for a valuable consideration," etc.

While this language is not quite as broad as that defining a "conveyance," in that it does not, expressly include as a purchaser one to whom is executed an instrument "by which the title to real estate may be affected," it seems to me that the two definitions must be construed together, and that since a "conveyance" has been held to include a discharge of a mortgage, logically it should be held that one to whom a discharge is executed is a purchaser within the statute.

Furthermore, since a mortgage, even though somewhat incongruously in the light of its real nature as a mere security, is a conveyance for the purposes of the Recording Act of an estate or interest in the land mortgaged, it is no great stretch to regard a discharge of the mortgage as releasing and thereby conveying the mortgagee's interest and thus bringing it within the exact language defining a purchaser. (*Decker* v. *Boice*, 83 N. Y. 215, 220, 221.)

If a discharge is a "conveyance" and the person to whom it is executed a "purchaser," there would be no difficulty in concluding that payment of the amount due on the mortgage would make the purchaser one for value and thus entitle him to the benefit of the Recording Acts.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, VANN, WILLARD BARTLETT and COLLIN, JJ., concur; HAIGHT, J., not voting.

Judgment affirmed.