[No. 6236-8-III.   Division Three.   March 26, 1985.]

LEONARD A. RODGERS, ET AL, *Respondents*, v.
SEATTLE–FIRST NATIONAL BANK, *Appellant.*

---

128

*Stephen M. Rummage* and *Davis, Wright, Todd, Riese & Jones,* for appellant.

*Douglas A. Wilson* and *Wilson & Mikesell,* for respondents.

MUNSON, J.—Seattle–First National Bank appeals from a judgment quieting title in Mr. and Mrs. Leonard Rodgers and denying its claim for damages against Yakima Federal Savings and Loan Association and Mr. and Mrs. Paul B. Noble. The sole issue is whether an obligor who had actual notice of an assignment of a deed of trust may be discharged upon payment to the assignor when the assignee would have told the obligor to pay the assignor if the obligor had inquired. We affirm.

The findings are unchallenged and are in large part based upon a stipulation of the parties. Columbia Pacific Mortgage, Inc. (CPM), was in the business of lending money to land developers and builders. To fund its activities, CPM obtained lines of credit from several banks, including one

for $7.7 million from Seattle–First's main office in Seattle. CPM's obligation to Seattle–First was evidenced by three master promissory notes—one for land development, one for residential construction, and one for commercial construction.

To secure the line of credit, CPM assigned promissory notes and deeds of trust received from its customers to Seattle–First. The value of the instruments assigned to Seattle–First was intended to approximate or exceed CPM's outstanding indebtedness to Seattle–First. The instruments went into a "collateral pool" which was controlled by CPM; CPM could add to or subtract from the pool according to its credit needs. Any pay down or borrowing on the line of credit bore no relation to the maturity dates on the notes securing the indebtedness. That is, there was no direct relationship between payments made by debtors to CPM and payments made by CPM to Seattle–First.

CPM and Seattle–First executed a "Security Agreement–General Pledge". Seattle–First filed a financing statement, took possession of the promissory notes, and recorded the assignments of the deeds of trust. Seattle–First's security interest was thus perfected. RCW 62A.9–304 (security interest in instrument perfected by possession); RCW 65.08.070 (recording of real property conveyances). *See Freeborn v. Seattle Trust & Sav. Bank,* 94 Wn.2d 336, 617 P.2d 424 (1980) (regarding assignment of vendor's interest in real estate contract).

The transaction at issue was a loan made by CPM to the Nobles to finance construction of a house. The Nobles gave CPM a nonnegotiable note[1] and deed of trust to secure the note. These were in turn assigned to Seattle–First, who took possession of the note and recorded the assignment of the deed of trust. The note provided payments were to be

---

[1]A note which is subject to another agreement is not negotiable. RCW 62A.3–104(1)(b), 62A.3–105(2)(a). The Nobles' note states it is subject to a master loan agreement and construction loan agreement.

made to CPM in Richland "or such other place . . . as the holder of this Note may designate in writing from time to time". At no time did Seattle–First tell the Nobles to make payments directly to it.

The Nobles sold the completed house to the Rodgers, who obtained long–term financing from Yakima Federal. Mr. Noble directed Yakima Federal to satisfy his obligation with CPM from the proceeds of the sale. Yakima Federal received a title report reflecting the assignment of the deed of trust to Seattle–First. A Yakima Federal employee telephoned Seattle–First's Richland branch, and was told that branch had no information regarding the transaction, and Yakima Federal should contact CPM. Yakima Federal did not contact Seattle–First's main office in Seattle, although that address appears on the assignment of the deed of trust. On March 27, 1980, Yakima Federal gave CPM a check for $59,139.72 to satisfy the Nobles' obligation. Yakima Federal did not demand contemporaneous production of the note or reconveyance of the deed of trust. Although Yakima Federal asked CPM about the reconveyance on several occasions, none was forthcoming. On July 10, 1980, CPM filed a bankruptcy petition.

Seattle–First did not have a mechanism to receive payments directly on loans made by CPM; CPM as the actual maker of the loans received the payments. The testimony disclosed that even if Yakima Federal had called Seattle–First's head branch, it would have been told to pay CPM. In March 1980, when the Nobles' loan was satisfied, CPM had not exceeded its credit limit with Seattle–First and Seattle–First had instructed neither CPM nor CPM's debtors to make payments directly to Seattle–First. Yakima Federal employees testified it is common in the mortgage banking industry to make an immediate payment to stop accrual of interest and then have a delay of several weeks before reconveyance of the documents by the mortgage company's creditor.

The Rodgers and Yakima Federal commenced an action to quiet title. Seattle–First counterclaimed for foreclosure

of the deed of trust and brought in the Nobles as third party defendants. Yakima Federal accepted the Nobles' tender of their defense and agreed to assume liability for any judgment against them in this action. The trial court quieted title in the Rodgers and dismissed Seattle–First's cross claim against the Nobles. Seattle–First appeals.

Seattle–First contends Yakima Federal cannot assert payment to CPM as a defense. Seattle–First argues any final payment of a note without demanding production of it is at the obligor's risk. *Assets Realization Co. v. Clark,* 205 N.Y. 105, 98 N.E. 457 (1912). This is especially true because Yakima Federal had actual notice through the title report of the assignment of the deed of trust. Since Seattle–First's security interest was perfected, it argues, it had an absolute right to collect upon default by CPM.

Yakima Federal counters that, if it had contacted Seattle–First's head office branch, it would have been told to pay CPM. Since Seattle–First was not insecure in March 1980 and never intended to exercise any control over this transaction, it cannot now complain. We agree.

Seattle–First extensively cites the Uniform Commercial Code. The transaction between CPM and the Nobles deals with real estate, and therefore RCW Title 62A, Article 9, does not apply. RCW 62A.9–104(j). Nor does RCW Title 62A, Article 3, apply because the Nobles gave CPM a non-negotiable note. However, Article 9 may apply to the "realty paper" given by CPM to Seattle–First. RCWA 62A.9–102, Official Comment 4; *Freeborn v. Seattle Trust & Sav. Bank, supra;* J. White & R. Summers, *Uniform Commercial Code* 890–91 (2d ed. 1980). Notwithstanding, Article 9 provides little guidance because a debtor on an "instrument" is not an "account debtor", entitled to pay the assignor under RCW 62A.9–318. *See* RCW 62A.9–105(1)(i) (defining "instrument"); RCW 62A.9–105(1)(a) (defining "account debtor"); Restatement (Second) of Contracts § 338, comment *h,* at 80 (1981). We therefore look to the common law.

The Restatement (Second) of Contracts § 338, at 75–76

(1981), provides:

> (1) Except as stated in this Section, notwithstanding an assignment, the assignor retains his power to discharge or modify the duty of the obligor to the extent that the obligor performs or otherwise gives value until but not after the obligor receives notification that the right has been assigned and that performance is to be rendered to the assignee.

Nonproduction of the symbolic writing at the time of payment has the same effect as receipt of notification by the obligor of an assignment.[2] Here, in addition to nonproduction of the documents, Yakima Federal had actual notice through the title report of the assignment.

The Restatement follows long–settled law that one paying a note, either negotiable or nonnegotiable, should demand production of it upon payment or risk having to pay again to the assignee. *In re Columbia Pac. Mortgage, Inc.,* 22 Bankr. 753 (W.D. Wash. 1982); *Assets Realization Co. v. Clark, supra.*[3] However, there are three exceptions which may provide for discharge of an obligor in the mort-

---

[2] "Aside from statute, an obligor who renders performance without requiring production of such a symbolic writing takes the risk that the person receiving performance does not have possession of the writing either because he has assigned it or because his right is defective. Non–production has the same effect as receipt of notification of assignment or reason to know of a defect in an assignee's right. In addition, the obligor who performs without surrender or cancellation of or appropriate notation on the writing takes the risk of further obligation to an assignee who takes possession of the writing as a bona fide purchaser. The latter rule may be regarded as an application of a broader doctrine of estoppel. See Restatement, Second, Agency §§ 8B, 176." Restatement (Second) of Contracts § 338, comment *h*, at 80 (1981).

[3] The rule has been severely criticized in G. Osborne, G. Nelson & D. Whitman, *Real Estate Finance Law* 344, 346 n.7 (1979):

"While the practice as described [in *Assets Realization Co. v. Clark, supra*] may have been prevalent in New York in 1912, it is certainly not so in the latter half of the Twentieth Century. Today the note is usually unavailable when the final payment is made. The payment is generally transmitted by an attorney or title company by mail and the mortgagee is trusted and expected to mark the note 'paid' and mail it to the mortgagor within a reasonable time after receipt of the payment. Certainly no inference of notice should be drawn from failure to deliver the note immediately upon the tender of the final payment."

gage context: (1) The assignor may offer a plausible explanation for not producing the documents. *Assets Realization Co. v. Clark, supra.* (2) The assignor may have been given authority to collect payments and thus be the agent of the assignee. *Ross v. Johnson,* 171 Wash. 658, 19 P.2d 101 (1933); *Pfeiffer v. Heyes,* 166 Wash. 125, 6 P.2d 612 (1932). (3) Through the course of dealing of the parties, the assignee may be estopped from claiming payment from the obligor or denying satisfaction of the mortgage. *Ross v. Johnson, supra; Erickson v. Kendall,* 112 Wash. 26, 191 P. 842 (1920). That is, the assignee may be the innocent party who must suffer. *Erickson v. Kendall, supra. See generally* G. Osborne, G. Nelson & D. Whitman, *Real Estate Finance Law* 344–50 (1979).

Here, the court declined to find an agency or estoppel, but rather rested its decision on (1) the language in the note requiring the Nobles to pay CPM until notified otherwise, and (2) the recorded assignment which the court believed was intended to protect Seattle–First from general creditors and subsequent assignees, not the debtors. The court indicated, however, that estoppel or agency would be alternate grounds to deny recovery to Seattle–First.

We uphold the trial court on the alternative grounds of estoppel and agency.[4] Seattle–First, through its course of dealing with CPM, led Nobles and Yakima Federal to believe payment to CPM would suffice. Seattle–First

---

[4]"Several courts have held that when an installment note secured by a mortgage is assigned and the assignor continues to collect the payments and remit them to the mortgage[e], this course of dealing constitutes the assignor the 'secret agent' of the assignee, and payment to the assignor is good though he subsequently defaults in passing it through to the assignee. This interpretation is apparently followed even if there was never any formal agency relationship created. There is no reason the concept should not be extended to single–payment notes as well. Moreover, an agency could well be inferred even if the mortgagee–assignor defaulted at the outset in remitting the payments to the assignee. This theory can be made equally applicable to negotiable and nonnegotiable notes. The agency relationship is too typical, too widely expected, and too consistent with business practices to be denied by the assignee who has not taken the trouble to send an appropriate notice to negate it. Absent such a notice, it should be presumed." (Footnote omitted.) G. Osborne, G. Nelson & D. Whitman, at 350.

ignores its own testimony that if the Nobles had inquired, they would have been told to pay CPM, which is what they did.

*In re Columbia Pac. Mortgage, Inc., supra,* cited by Seattle–First, is distinguishable. It was merely a denial of summary judgment; if the court had been presented with this situation, where the assignee would have told the obligor to pay the assignor, it might have ruled differently.

Seattle–First argues the Nobles and Yakima Federal should have issued a dual payee check or set up an escrow account. The court found, based upon substantial evidence, an escrow is not customary in residential real estate transactions, and Seattle–First would have endorsed a dual payee check back to CPM.

The judgment is affirmed.

GREEN, C.J., and THOMPSON, J., concur.

Reconsideration denied May 8, 1985.

Review denied by Supreme Court August 16, 1985.