[Filed December 19, 1887.]

# B. A. OWENS ADAIR, Respondent, v. DAVID LENOX, Appellant.

NEGOTIABLE PAPER—DEFENSE TO ACTIONS UPON.—The maker of a negotiable promissory note cannot defend against an action thereon in favor of an indorsee for value, on the ground that it was paid to a former indorsee, even though the transfer to the plaintiff in the action was made after the note was due.

SAME.—The rule that the transfer of an overdue note is made subject to all equities existing between the original parties does not extend to matters arising subsequent to the making of the note, and not affecting the contract, as originally made.

SAME.—A note once negotiable remains so until it is paid; the fact that it becomes overdue does not destroy its negotiability.

SAME.—It is the duty of the maker of such paper to see to it that the payee has it in possession, and to take it up when he pays it.

APPEAL from Douglas County.

*W. R. Willis*, for Respondent.

*J. C. Fullerton*, and *J. W. Hamilton*, for Appellant.

THAYER, J.—This appeal comes here from a judgment of the Circuit Court for the county of Douglas. The respondent brought an action in that court against the appellant upon a promissory note for $324.16, executed by the appellant January 2, 1886, payable to the order of Caro & Brothers, at Roseburg, Douglas County, Oregon, one day after date, with interest at ten per cent per annum, and indorsed by them on the sixth day of July, 1886, to one W. F. Owens. Said Owens, on the twenty-third day of July, 1886, indorsed the note to the respondent. The defense interposed by the appellant was payment made by him to said W. F. Owens on the twenty-fourth day of August, 1886. The case was tried by jury, who rendered a verdict for the respondent for the amount of the note and interest, and upon which the judgment appealed from was entered.

The main question in the case is, whether the payment to W. F. Owens, conceding the transaction between the appellant and Owens would have amounted to payment had the latter at the time been the holder of the note, constituted a legal payment of the note. The respondent testified, as a witness in the case, that

on the twenty-third day of July, 1886, she signed a note for five thousand dollars as security for said W. F. Owens, and that he got the money on it, and gave her the note in suit, with other notes, as security for anything she might have to pay on the five-thousand-dollar note; that she afterwards had to pay the latter note; that the first time she notified the appellant that she owned the note in suit, or gave him any notice regarding it, was on the eighth day of November, 1886. Simon Caro, one of the firm of Caro & Bros., testified that he indorsed the note in suit to W. F. Owens for collection, which was the only interest said Owens had in it. The appellant testified that he paid the note sued on to W. F. Owens in full, by hauling him his crop of wheat for the year 1886; that he finished hauling along about the latter part of August of that year; that the reason that he did not take the note up immediately, or at least demand it, was because Owens told him he had the note from the Caros, and he paid it, not doubting but that it was all right to pay it; that he had no notice that respondent claimed any interest in it, until along in November, 1886, when her attorney wrote to him about it.

The court instructed the jury to the effect that any payment made upon the note to W. F. Owens, after he transferred it to respondent, was no defense, and refused to instruct them that, in case the transfer was made to respondent after it became due, the appellant was entitled to notice of it; and that if, before notice of the transfer, the appellant paid the amount of the note in payment thereof to W. F. Owens, it was a defense to the action. To the instruction given, and refusal to give the others respectively, the appellant's counsel saved an exception, which presents the matter to be determined.

The whole question resolves itself into this: If the payee of a negotiable promissory note indorses it to a third person after it becomes due, and the latter subsequently indorses it, for value, to a holder, will a payment by the maker to such third person, intended as a payment of the note, made after his indorsement to the holder, but without notice thereof, constitute a valid payment of the note? The counsel for the appellant contends that

it will, and he relies, I think, entirely upon the provision contained in section 28 of the Civil Code of this State, which reads as follows: "In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off, or other defense existing at the time of, or before notice of the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange transferred in good faith and upon good consideration before due."

The counsel has cited a number of cases from the different States in which a similar provision of statute has been adopted, in which it has been construed as applicable to promissory notes transferred after due. That construction has been adopted in the cases referred to by construing the negative words, "but this section shall not apply to a negotiable promissory note," etc., as implying the affirmative, that a negotiable promissory note or a bill of exchange, transferred after due, stands upon the same footing of an assignment of a thing in action; and in an action by the holder, shall subject the same to any set-off, etc., "existing before notice of the transfer." But I am not willing to assent to that view. The cases referred to, in my opinion, were not well considered. In order to ascertain how far a negative provision implies an affirmative one, its nature and object must be inquired into. Section 27 of the Civil Code of this State, provides that "every action shall be prosecuted in the name of the real party in interest," except in some particular cases referred to therein. Mr. Pomeroy, in commenting upon the two sections, says they do not change existing law as to defenses under the circumstanced mentioned therein. Taking the two together, the plain interpretation of them is that the "assignee of a thing in action must sue upon it in his own name, but this change in the practice shall not work any alteration of the actual rights of the parties; the defendants are still entitled to the same defenses against the assignee who sues which they would have had if the former rule had continued to prevail, and the action had been brought in the name of the assignor, but to no other or different defenses." In other words, the section must be interpreted as though it read as follows: "In the case of the assignment of a thing in action,

the action of the assignee shall be without prejudice to any set-off, or other defense (now allowed) existing at the time of, or before notice of the assignment, which would have been available to the defendant had the action been brought in the name of the assignor." This construction, he says, is now firmly and universally established. (Pomeroy on Rem. & R. R. § 156.)

The holder of negotiable paper does not acquire the right to sue on it in his own name from the provision of the statute referred to; he has always had that right since the statute of Anne. The legal title to the instrument, although negotiated after maturity, is transferred to the holder, by indorsement, when payable to order, and by simple delivery, when payable to bearer. Said provision, notwithstanding the negative words referred to, could not have been intended to apply to negotiable paper, whether transferred before or after due. Because the provision is not made applicable to such paper when transferred "in good faith, and upon good consideration before due," it does not necessarily follow that it is applicable to such paper when transferred after due, any more than the clause in section 27, referred to, which says: "But this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract," implies that things in action not arising out of contract are non-assignable, although it seems to have confused some of the courts, in the outset of the Code practice, upon that question. But now it is universally held that any claim affecting the party's estate, although it be a pure tort, is assignable. The Code was not intended to change general rules of law; the codifiers only had in view a simplification of the rules of practice, and it was adopted to effectuate that purpose. In order to determine, then, the question involved, we must examine the general rule upon the subject, as established by judicial wisdom, and not resort to any refined construction of Code practice.

The rules of law applicable to cases of assignment of things in action never included the transfer of negotiable paper, whether negotiated before or after it became due. Such paper does not lose its negotiable character after it matures. Its quality in that

particular depends upon the form of the obligation. If it be a written promise of one party to pay to the order of another, or to bearer, a specified sum of money, at a certain designated time, it is negotiable always; and when the payor desires to discharge his obligation, by payment, he must find the legal owner or holder, and pay him, unless he has taken the precaution to make it payable at a particular place. This is an elementary rule. Paying it to some one who had been the holder, but who had prior to the time of the attempted payment negotiated it for value to another person, cannot, it seems to me, upon any rule or principle be considered payment. Not having had notice of the transfer is no excuse. Payment and delivery up of the note for cancellation are concurrent acts. A holder will not ordinarily be entitled to have judgment entered upon such an instrument, without bringing it into court to be canceled.

The appellant had the right to demand of Owens an inspection of the note before paying it. He should have done that. He could not otherwise know that Owens had it, and then he should have been certain that it had been regularly indorsed to him by the payees thereof. No prudent person would pay such an obligation and leave it outstanding, or pay it to an indorsee without knowing that he had possession of it at the time. Daniel, in his work on Negotiable Instruments, lays it down as elementary, that the payor, in making payment after maturity, must be sure that it is made to the then holder; for he says: "If it should have been transferred after maturity, and before payment, to a third party, a payment to the transferrer would be invalid, and the transferee holding the instrument could himself enforce payment." And he cites *Davis* v. *Miller*, 14 Gratt. 1, which is in approval of *Baxter* v. *Little*, 6 Met. 7, as authority. (Daniel on Negotiable Instruments, § 1233 *a*.) This view, to my mind, is fully supported by principle and authority. The rule existed long before the adoption of the Code, and I do not think it was intended to be abrogated by it. The question as to the extent of W. F. Owens' interest in the note, I do not think material. The payees clothed him with the *indicia* of ownership of it, and if he

procured credit on the strength of it they ought not to be heard to complain.

The judgment appealed from must be affirmed.

LORD, C. J., absent.