Argued June 3; affirmed July 14; rehearing denied October 20, 1931

# CHRISTIAN COMMUNITY OF UNIVERSAL BROTHERHOOD, Limited, *v.* GRAF et al.

### (1 P. (2d) 596)

*H. E. Slattery,* of Eugene, for appellant.

*Charles A. Hardy,* of Eugene, for respondents.

RAND, J. The plaintiff, a corporation having its principal office and place of business at Brilliant, in the province of British Columbia, brought this suit seeking the cancellation of a mortgage upon the ground that the entire indebtedness secured thereby had been fully paid and satisfied. The mortgage was given to secure the payment of six promissory notes executed by plaintiff and payable to the order of Edward and Susanna Graf, five of which notes were negotiated to the defendant bank and have been paid. This controversy is over the sixth note and it also has been paid if the payments made thereon were paid to the right person. The bank answered the complaint and set up affirmatively that it purchased the note in good faith for value and before maturity and that it later negotiated it to S. Mogensen, who at the time was the cashier of the bank. Mogensen intervened and filed an answer in the nature of a cross-complaint, alleging that he was a holder in due course and praying for foreclosure of the mortgage for the balance which he claimed to be due and unpaid on the note. He had decree and plaintiff has appealed.

The six notes were given for the balance owing by plaintiff on the purchase price of lands sold and conveyed by the defendants Graf to plaintiff. They

constituted a series of notes that were payable consecutively on the first day of December of each year commencing with the year 1924 and ending with the year 1929. Each note contained a provision that if the interest was not paid annually the whole note, at the option of the holder, should become immediately due and collectible. About January, 1926, there was a slight default in the payment of the interest then due and the bank, acting for itself and also for Edward and Susanna Graf, exercised the option given by the notes and declared all the then unpaid notes due and collectible. The note in question was negotiated to the bank after said action had been so taken.

■ When a note provides that it shall become due and collectible or payable upon default in the payment of any instalment of interest due, by the terms of such note, it becomes a matured note upon failure to pay as provided and one who purchases it after that time is a holder after maturity and takes the note subject to all equities and defenses that would be available against the original holder: 1 Joyce, Defenses to Commercial Paper (2d Ed.), § 269. In the instant case the evidence shows that the bank took the note as collateral security, after the option to declare the whole note due had been exercised and notice thereof given, and hence was not a holder in due course. Mogensen, who was an officer of the bank at the time and who was conversant with all the facts, stands in no better position. The note, however, was negotiable in form and was transferred to the bank by indorsement and delivery although after maturity. At the time of the transfer a part of the principal had been paid and all these payments had been indorsed upon the note and plaintiff had no equity or defense to the note at that time. The question,

therefore, of whether the bank or Mogensen is a holder in due course is of no importance since only payments later made are in controversy here.

The defense which plaintiff now seeks to make is payment by it of the balance due to Edward Graf, which payment was made after the note had been transferred by Graf to the bank and which payment the bank has not received. The circumstances under which the payment to Graf was made are as follows: After having declared this and the other notes to be due and payable, the bank sent Edward Graf to Brilliant to arrange for the collection of the note and both by a telegram and a letter notified plaintiff that Graf was authorized to act for the bank in obtaining a settlement of the matters involved and that the bank was sending him as its personal representative for that purpose. While he was there certain payments were made, all of which were duly credited upon the indebtedness owing by plaintiff. Graf then returned to Oregon and later transferred the note in controversy to the bank as collateral security for moneys borrowed. Subsequent thereto and on or about November 5, 1927, Graf again went to Brilliant and while there represented to plaintiff that he was the owner of the note and that the note was in the custody of the defendant bank and plaintiff, believing that Graf was the owner of the note and had authority to receive payment thereof, paid to Graf the balance due on the note. Graf thereupon executed a receipt for the payment and an order upon the defendant bank to deliver the note to plaintiff. The money was not paid over to the bank and the bank refused to credit the amount thereof upon the note.

■ Plaintiff contends that because Graf was authorized to act for the bank upon his first visit to Brilliant, which occurred in January or February, 1926, and no

notice was subsequently given of the revocation of his authority, plaintiff had a right to assume that he was such agent and so authorized on November 5, 1927, when it paid the money to Graf. The answer to this contention is twofold under the evidence. The receipt given by Graf to plaintiff for the moneys paid shows that in receiving the money Graf was not acting for the bank but was acting for himself, while the statements made in the telegram and letter show that the agency of Graf was an agency limited to the time of his visit on that particular occasion.

■ Plaintiff further contends that the note in question at the time the payment was made was the sole property of Edward and Susanna Graf and that no transfer of it had ever been made. This contention is not supported by the evidence and is obviously based upon hearsay statements made by Graf and believed by plaintiff at the time plaintiff paid Graf the balance due on the note. Graf resides somewhere in Canada. He was not called as a witness in the case and no effort was made to take his deposition. The whole evidence shows that the note was transferred as collateral security for moneys borrowed by Graf; besides the note itself shows that it has been indorsed in blank by both Edward and Susanna Graf and was in the possession of the bank at the time the payment was made. Under such circumstances it is clear that, in the absence of any authority from the bank, payment of the note to Graf without its surrender would not bind the bank or discharge the obligation if the note was a negotiable promissory note, regardless of whether its transfer to the bank had occurred before or after its maturity: *Adair v. Lenox,* 15 Or. 489 (16 P. 182); *Rayburn v. Hurd,* 20 Or. 229 (25 P. 635). As said by Judge THAYER in *Adair v. Lenox,* supra:

"The rules of law applicable to cases of assignment of things in action never included the transfer of negotiable paper, whether negotiated before or after it became due. Such paper does not lose its negotiable character after it matures. Its quality in that particular depends upon the form of the obligation. * * * Paying it to some one who had been the holder, but who had prior to the time of the attempted payment negotiated it for value to another person, cannot, it seems to me, upon any rule or principle be considered payment. Not having had notice of the transfer is no excuse. Payment and delivery up of the note for cancelation are concurrent acts."

■■ The distinction between the transfer of a negotiable note before maturity in good faith and for value and a transfer after maturity is that in the one case the indorsee is a holder in due course and the note is not subject to any equity or defense which would have been available against the original holder at the time of the transfer, while in the other case he takes it subject to all equities and defenses which would have been available against the original holder at the time of the transfer if the note had not been negotiated. The defense sought to be interposed here, however, is payment claimed to have been made subsequent to the transfer of the note to the bank. But plaintiff contends that the note was non-negotiable because of a typewritten statement made on the back thereof which reads as follows: "This note is given to apply on the purchase price of land in township 18 * * * and more particularly described in mortgage made by the maker of this note dated January 19, 1924."

In *Hull v. Angus,* 60 Or. 95 (118 P. 284), the note sued on contained this recital: "This note is given as a part of the purchase price of real property, and is secured by mortgage of even date herewith, and is

subject to all the terms and conditions of said mortgage." In holding that a note reciting that it was subject to all the terms and conditions of a mortgage was non-negotiable, the court, speaking through Mr. Justice BURNETT, said:

"It would be doing violence to the language to say that the note is unconditional, when it expressly says upon its face that it is subject to conditions. The reference to the mortgage by the terms of the note is in effect making the note and mortgage one instrument, with the conditions rendering the note non-negotiable."

There is no such condition stated here. The recital merely refers to a mortgage and the case comes within the rule announced in *Page v. Ford,* 65 Or. 450 (131 P. 1013, 45 L. R. A. (N. S.) 247, Ann. Cas. 1915A, 1048), where it was held that such reference merely to a mortgage would not render the note non-negotiable. In distinguishing between the two cases, Mr. Justice McBRIDE, who wrote the decision in the case last referred to, said:

"By the very terms of the note [the one referred to in *Hull v. Angus*], every condition of the mortgage was imported into it."

which was not the case in *Page v. Ford,* nor is there any such provision in the note now under consideration.

It appears from the evidence, the written correspondence of the parties which was offered in evidence, that on November 23, 1928, in settling the last of the other notes referred to, plaintiff overpaid the bank the sum of $218.07, which has not been credited by the bank upon any obligation of the plaintiff and that by a letter written in the name of the bank by cross-complainant Mogensen, under date of November 27, 1928, the overpayment of said sum was acknowledged. The decree

appealed from will, therefore, be modified so as to award Mogensen judgment and decree for the sum of $1,780.93 with interest from the 19th day of January, 1929, at the rate of six per cent per annum.

Finding no other error in the record, the decree as so modified will be affirmed but without costs to either party upon this appeal.

BEAN, C. J., ROSSMAN and KELLY, JJ., concur.