Argued February 8; reversed April 17, 1934

# TILTON *v.* BOLAND

(31 P. (2d) 657)

*Arthur H. Lewis,* of Portland (Lewis, Lewis & Finnigan, of Portland, on the brief), for appellant.

*W. L. Brewster,* of Portland (Chriss A. Bell, of Portland, on the brief), for respondent.

ROSSMAN, J. The facts are virtually free of dispute. The John Bain Investment Company, to which we shall hereafter refer as the Bain Company, was engaged in the mortgage loan business in Portland. In the early part of August, 1927, the defendant desired to borrow $1,500 upon the security of a parcel of Portland property which she owned. August 8, 1927, she executed and delivered to the Bain Company a note for $1,500, payable three years hence at that company's office, to it or to its order, and also a mortgage in which she described her aforementioned property to secure payment of the note. The note bore interest at the rate of 8 per cent per annum after maturity. Provision for interest in the three-year interval was made by the defendant's execution of twelve interest notes payable quarterly on an 8 per cent basis. Upon their reverse side appears in print: "This note is payable only at the office of the John Bain Investment Company and is subject to a commission of ........ of its face value due to said Company." While the evidence upon the subject is meager, it, nevertheless, seems to warrant the inference that on August 8 the Bain Company paid to the defendant, or to her order, $1,470, and that it subsequently disbursed the balance for expenses incident to the loan. In the early part of August of 1927 Martin Schade desired to invest $1,500 in a mortgage loan, and

applied to the Bain Company. It suggested the defendant's note and mortgage. After Schade had inspected this property, he paid to the Bain Company $1,500 and received the defendant's $1,500 note and mortgage. Upon the back of the thirteen notes the Bain Company, over its signature, wrote: "Without recourse, pay to the order of Martin Schade or Mary L. Tilton or survivor." Mary L. Tilton was the daughter of Martin Schade, and this form of endorsement was devised in the belief that upon the death of the father, who was an elderly man in ill health, this item of property would be owned by the daughter without the intervention of probate proceedings. In November of 1928 the father died, and both plaintiff and defendant now are satisfied that Mary L. Tilton, the plaintiff in this case, is the owner of the note and mortgage. See *Ehrlich v. Mulligan,* 104 N. J. Law 375 (140 Atl. 463, 57 A. L. R. 596), and annotation. August 9, 1927, the Bain Company executed an assignment of the mortgage, transferring it to Martin Schade or Mary L. Tilton or survivor, together with the thirteen notes. It was recorded August 26, 1927, in the mortgage records, pursuant to the provisions of §§ 54-103 to 54-105, Oregon Code 1930. Although the principal note was delivered to Martin Schade the twelve interest notes were retained by the Bain Company. An understanding was effected at the time the notes were purchased whereby interest was to be remitted to Schade on a basis of 7 per cent, and the Bain Company was to retain the balance as compensation for its services in making interest collections. Following the completion of this transaction, the Bain Company remitted to Schade until his death, and then to Mary L. Tilton, the agreed interest money quartely, and, from time to time, as the interest

notes were paid, returned the paid notes to the defendant. The defendant had no actual knowledge of the purchase of the note and mortgage by Martin Schade nor of the fact that he had become the owner of these instruments.

After the above notes and mortgage had been executed and the defendant had expressed an interest in finding means for reducing the principal from time to time, the Bain Company sent her an announcement reading as follows:

"This Company, in order to afford to mortgagors the opportunity of reducing their indebtedness, has put into operation a system which we believe will work to the advantage of all concerned. We are prepared to accept from borrowers sums of $20 or upwards, for which receipts will be issued, payable, with a substantial rate of interest, on the date of maturity of their mortgages. Thus, when a mortgage becomes due, the amount of the receipts held by the mortgagor, or owner of the mortgaged property, will be applied on the debt. At the same time the question of a renewal of the mortgage for any balance due may be considered. If any of our borrowers are interested in the reduction of their indebtedness in this way, we shall be glad to furnish further information on request."

In July of 1928 the defendant, believing this plan to be attractive, began making deposits with the company. On August 1, 1930, when the principal note matured, these deposits aggregated $810. Upon that day the Bain Company added to this total $39.62 interest, and on the same day the defendant paid the company $50.38 cash. Thereupon it credited her upon its books with a payment of $900 upon the $1,500 note and gave her its receipt acknowledging payment of $900 "on a/c of principal". At the same time the Bain Company assured the defendant that the

time for the payment of the balance of the debt would be extended. Neither the defendant nor the Bain Company, however, mentioned these developments to the plaintiff, and she had no knowledge whatever of the credit nor of the above described deposit arrangement. A few days after the maturity of the note, the plaintiff's husband inquired of the Bain Company concerning the likelihood of payment of the $1,500 note and was informed that if the plaintiff was satisfied with her investment it would be unnecessary to execute any formal instrument continuing it in effect for an extended period. After consulting with an attorney who advised him that the execution of an instrument was unnecessary, neither he nor the plaintiff said anything more to the Bain Company concerning the nonpayment of the note or an extension of time. After this credit had been given, the defendant paid the Bain Company interest at the rate of 8 per cent per annum upon $600, and continued her practice of making deposits for the eventual retirement of the balance of $600 shown on the Company's books. The Bain Company, however, remitted interest to the plaintiff quarterly upon $1,500 as it had done before maturity of the note, making no mention whatever of the $900 credit. By January 28, 1932, the defendant's deposits made subsequent to August 1, 1930, aggregated $540, and at that time the Bain Company credited her upon its books with that amount, together with $20.40 interest, making a total of $560.40. It also gave her its receipt for $560.40 "on a/c of principal". Nothing, however, was paid to the plaintiff and she was still in ignorance of the deposit arrangement. Defendant did not ask for the production of the $1,500 note nor inquire concerning its ownership when these two credits were given to her.

In April of 1933 the defalcations of the Bain Company were discovered. According to a statement made by the defendant's attorney, upon oral argument, the Bain Company "wound up with $50,000.00 in default on many mortgages that it handled this way".

The above, we believe, constitutes a fair resume of the evidence. The defendant argues that the following indicate that the Bain Company was the plaintiff's agent, with power to receive payment of the $1,500 note: (1) Martin Schade appointed the Bain Company as his agent (so the defendant argues) to procure this loan; (2) he permitted the Bain Company to insert its name as payee in the thirteen notes and as mortgagee in the mortgage; (3) all of the notes were payable at the office of the Bain Company; (4) the twelve interest notes were left in the possession of the Bain Company for collection; (5) at the maturity of the $1,500 note the plaintiff intrusted the Bain Company with authority (so the defendant argues) to effect an extension of time for its payment; (6) the plaintiff gave no actual notice to the defendant of her ownership of these instruments.

Let us analyze the merits of these propositions. The first and the fifth we do not believe are supported by the evidence. We are of the opinion that Martin Schade did not employ the Bain Company as his agent to arrange for this loan, inspect the property, prepare the legal instruments, etc., but merely purchased from it the notes and mortgage after the Bain Company had completed the loan. In other words, at that moment the relationship between the Bain Company and Schade was that of vendor and vendee. Nor do we believe that the plaintiff intrusted the Bain Company with authority to effect an extension of time for

the payment of the $1,500 note. The evidence merely indicates that after the plaintiff's husband had inquired of the Bain Company concerning payment of the note and had received a reply, he did not return, nor did the plaintiff communicate with the Bain Company. They remained silent. We find in this no delegation of authority to the Bain Company, and, since the latter had not apprised the plaintiff of what had occurred between itself and the defendant, the silence was not a ratification of anything which the supposed agent had done. Before ratification can take place the principal must have knowledge of the material facts: Mechem on Agency (2d Ed.) § 393. We find no merit in the third proposition which suggests that because the $1,500 note was payable at the office of the Bain Company it possessed authority to receive its payment. We quote from *Kelsay v. Taylor,* 56 Or. 13 (107 P. 609):

"The provision in the note, making it payable at the bank of French & Co. did not make that bank the agent of the payee to receive the money unless they actually had possession of the note when the money was sent."

From 21 R. C. L., page 868, § 43, we quote:

"Although a negotiable promissory note be made payable at a particular office, such fact does not constitute the party in charge of such office the agent of the holder of such note to receive the money thereon, unless such note is in the possession of such party. 'Again, authority to solicit or negotiate loans raises no presumption or implication of authority to collect such loans without the possession of the securities."

See also *Adler v. Interstate Trust & Banking Co.,* 166 Miss. 215 (146 So. 107, 87 A. L. R. 347), where the court, after holding to the same effect as our above-quoted decision, cites many authorities in support of its holding.

■ The fourth proposition upon which the defendant relies, and which suggests that since the twelve interest notes were left for collection with the Bain Company, which was payee of all thirteen notes, its authority extended to the collection of the principal note although it was in the plaintiff's possession. This contention finds no support among the authorities. From Jones on Mortgages (8th Ed.) § 1231, we quote:

"Even authority to collect the interest upon a mortgage does not afford ground for inferring authority to collect the principal, where the agent is not intrusted with the possession of the securities.   *   *   * The rule has been generally adhered to in the adjudged cases that the possession of the securities by the agent is the indispensable evidence of his authority to collect the principal."

See also § 1235.   From Mechem on Agency (2d Ed.) § 945, we quote:

"The mere fact that an agent is, either expressly or by implication, authorized to receive the interest upon a principal sum, will not justify the inference that the agent is authorized to receive the principal sum itself."

See to like effect 2 C. J., Agency, page 621, § 257, and 8 C. J., Bills and Notes, page 598, § 835.

■ The sixth proposition, which submits that because the plaintiff gave no actual notice to the defendant of her ownership of the $1,500 note payment to the Bain Company discharged the obligation, we believe manifestly lacks merit. The defendant took upon herself a contractual duty when she signed the note to pay it at maturity to any bona fide endorsee without reference to any defense to which it might have been subject in the hands of the payee: *Bamberger v. Geiser,* 24 Or. 203 (33 P. 609). The note was negotiable in character and any holder of it in due course who had

possession was not required to give notice in order to terminate the right of the payee to receive payment. To protect the debtor in making payment of a negotiable instrument he must see to it that the person to whom he makes payment possesses the note, for payment to one not in possession casts the burden on the debtor, of proving that such person (1) had express authority to receive payment, or (2) had apparent or ostensible authority to receive it, or (3) that the money paid actually reached the owner. However, nonpossession is not conclusive as to the purported agent's lack of authority: *Christian Brotherhood v. Graf,* 137 Or. 638 (1 P. (2d) 596); *Rhodes v. Belchee,* 36 Or. 141 (59 P. 117); *Long Creek Building Assn. v. State Insurance Co.,* 29 Or. 569 (46 P. 366); *Swegle v. Wells,* 7 Or. 222; Jones on Mortgages (8th Ed.) § 1231; 21 R. C. L., Principal and Agent, p. 868, § 43; 8 C. J., Bills and Notes, p. 593, § 828. We conclude that none of these propositions alone suffice to show that the Bain Company possessed authority, either express or ostensible, to receive payment of the $1,500 note.

██ But the defendant apparently believes that the combined effect of the above circumstances operates to estop the plaintiff from asserting that the Bain Company lacked authority to receive payment of the principal note. She relies especially upon *Campbell v. Gowans,* 35 Utah 268 (100 P. 397, 23 L. R. A. (N. S.) 414, 19 Ann. Cas. 660); *Weigell v. Gregg,* 161 Wis. 413 (154 N. W. 645, L. R. A. 1916B, 856), and upon the annotations accompanying these cases in the selective case reporters just cited. In neither of the cited cases had the payee assigned the note and mortgage to a third party, but in each case the contested payments were made to a person whom the court found was the agent of the payee. In the first case, that person, one Conway,

had negotiated the loan as the agent of the payee, had collected the interest coupons, had collected other obligations due to the principal upon other loans, and, although he had failed, with the knowledge of the payee, to faithfully remit to him sums collected, the principal had not terminated his authority but had permitted him to continue. The court found that Conway was ostensibly the payee's agent and was much persuaded by the principle that when one of two innocent persons must suffer a loss caused by the wrongs of a third person the one who enabled the wrongdoer to occasion the loss must sustain it. It apparently felt that the payee, by employing an agent whom he knew to be dishonest, had made the deception possible. It will be observed that three circumstances were present in that case which are absent in ours: (1) the alleged agent negotiated the loan; (2) he made collections for the lender upon several obligations; and (3) his dishonesty was known to the lender. In the second case, the plaintiff bought a note secured by a mortgage from the Citizens Trust Company, payable to it, but obtained no assignment and never notified the obligor of his purchase. He, however, took possession of the instruments. The interest coupons were paid to the trust company which accounted to the plaintiff. Upon the maturity of the obligation the time of payment was extended by the trust company, with the plaintiff's approval, by an instrument signed by it and the payor and which named as the payee "The Citizens Trust Company, as agent". Again, the plaintiff failed to give notice of his ownership, and again no assignment of any kind was prepared. The payor continued to make payments of interest to the trust company. The latter acted as agent of the plaintiff in the collection of interest and principal upon several other notes, and, as

his agent, attended to tax and insurance matters for him. Occasionally sums collected in his behalf were invested by the trust company for him. Before maturity of the obligation the payor made two payments of principal to the trust company which failed to remit to the plaintiff. Upon discovering these defaults the plaintiff sought to effect a settlement with the trust company and did not discontinue these efforts until the company closed its doors, when he, for the first time, gave notice to the payor of his ownership. In holding that the payor was entitled to credit for these two payments, the court found that the trust company was the plaintiff's ostensible agent, and that he, in concealing his identity, had misled the payor. It was much persuaded by the fact that the plaintiff had chosen as his agent a trust company which, under the Wisconsin statutes, was invested with broad powers. It asserted that under the business usages which had grown up in Wisconsin "it is becoming customary in the business world to do just what the plaintiff did in this case—leave it to the trust company to collect principal and interest on loans purchased from it". We believe that the distinction between that case and the present one is obvious.

In our case the plaintiff conferred no express power upon the Bain Company to do anything except to collect interest money. All of the notes were endorsed: "Pay to the order of Martin Schade or Mary L. Tilton or survivor", and from time to time, as the interest notes were returned to the defendant, she was handed written evidence that the plaintiff was owner of the notes. In the mortgage records of the county in which the defendant resided the instrument of assignment was on file which constituted a source of information as to the ownership of these obligations. The

only circumstances from which an agency to accept payment of the principal note could be inferred are (1) the Bain Company was the payee of the thirteen notes; (2) the notes were payable at its office; (3) it had had possession of the twelve interest notes before their payment; and (4) the plaintiff gave to the defendant no actual notice of her ownership. But similar sets of circumstances have been many times. rejected as insufficient proof of agency to collect principal. Many decisions could be cited, but the following will suffice: *Murphy v. Barnard,* 162 Mass. 72 (38 N. E. 29, 44 Am. St. Rep. 340); *Trowbridge v. Ross,* 105 Mich. 598, (63 N. W. 534); *Bromley v. Lathrop,* 105 Mich. 492 (63 N. W. 510); *Hollinshead v. John Stuart & Co.,* 8 N. D. 35 (77 N. W. 89, 42 L. R. A. 659). We find no premise whatever for a conclusion that the plaintiff authorized the Bain Company to effect collection of the $1,500 note.

■ There is still another reason which we believe demands a reversal of the decree of the circuit court. Assuming that the Bain Company was the plaintiff's agent, we cannot see how the credit of $900 in favor of the defendant, which that company entered on its books August 1, 1930, and the credit of $560.40 entered on February 1, 1932, can be said to constitute payment upon the $1,500 note. It will be recalled that on August 1, 1930, the Bain Company owed the defendant $849.62. Instead of paying her that amount of money it credited her with $849.62 upon her note and gave her a further credit of $50.38 for cash which she paid at that time. Upon the credit side of the ledger card showing the account between the plaintiff and itself, it wrote, in red ink: "By balance, $900.00" indicating thereby possibly lack of ability to remit to the plaintiff. February 1, 1932, a similar situation presented

itself. The Bain Company found itself indebted to the defendant to the extent of $560.40, and upon that day endeavored to discharge its indebtedness to the defendant by crediting her with that amount paid to the plaintiff. It entered in the credit column of its ledger card account with the plaintiff: "January 28, Loan Re Fund $560.40." It will be observed that that entry does not indicate receipt of cash. Thus, the alleged payments consisted of nothing more than bookkeeping entries which the alleged agent made in an effort to serve his own interests. There is no proof that the Bain Company was solvent upon either of the two above occasions, although, from the above-quoted statement made by the defendant's counsel, it seems likely that it may have been insolvent. From Mechem on Agency (2d Ed.) § 946, we quote:

"Where an agent is authorized merely to collect and demand or to receive payment of a debt, the law, in the absence of anything to indicate a wider authority, interprets this to mean a collection or payment in fact, and the agent cannot bind his principal by any arrangement short of an actual collection and receipt of the money. He cannot, therefore, take in payment * * * the note or bond of himself * * *."

From 2 C. J., Agency, p. 631, § 271, we quote:

"In the absence of some general usage or custom or express authority the agent cannot discharge the debtor by accepting as payment an agreement that an indebtedness owing from the agent to the debtor shall be set off against the indebtedness owing to the principal by the debtor. But where the amount due from the agent is paid in cash to the debtor and forms a part of the cash payment made by him to the agent for his principal, the rule does not apply."

From 21 R. C. L., Principal and Agent, p. 869, § 44, we quote:

"Although an agent is conceded to be a general agent, with general power to sell or collect, or both,

and take payment either in cash or credit, yet he does not possess all the power and authority over the property of his principal which the principal possesses and may exercise, and such general power gives an agent no authority to substitute himself as creditor in place of his principal, or transfer a debt of his principal to himself by taking in payment thereof a note payable to himself.''

The texts accompany the above statements of the rule with the citation of many authorities. We shall make express mention of only one of these: *Gilchrist v. Johnson,* 200 Ala. 200 (75 So. 958). The entire decision reads as follows:

''We agree with the chancery court that while it may be conceded that Poteet was the agent of Mrs. Johnson and had authority to bind her by receiving payments on the mortgage indebtedness, the credit to Gilchrist for which a receipt was given in the first part of 1910 of $100 was not such a payment of the mortgage debt as would be binding on the mortgagee. It is evident that the consideration for the receipt was not such a payment in money as would be binding upon Mrs. Johnson, the mortgagee, but arose from a settlement of individual matters between Poteet and Gilchrist, and that the only money that passed between them was a few dollars for the purpose of striking a proper balance between the parties.''

We believe that the above suffices to indicate that the defense of payment was not sustained by the proof.

Having taken the above views, it follows that the plaintiff is entitled to a decree in harmony with the prayer of her complaint. The situation, however, is an unfortunate one, and, hence, we do not believe that costs should be allowed to either party.

RAND, C. J., and KELLY and CAMPBELL, JJ., concur.