Argued May 16; affirmed October 1, 1935

# HENNINGSEN v. TITLE & TRUST CO.

(49 P. (2d) 458)

*Earl C. Bronaugh, Jr.*, of Portland (Bronaugh, Hamilton, Bynon & Bronaugh, of Portland, on the brief), for appellant.

*Maurice W. Seitz*, of Portland (Carl D. Christensen, of Portland, on the brief), for respondent.

ROSSMAN, J. The following are the facts revealed by the evidence. The defendant insures titles to real property. In the year 1920, and until his death in November, 1930, one H. E. Mooney was engaged in business in Portland as a financial agent. In the course of his activities he made mortgage loans and sold mortgages. In 1920, F. W. Henningsen, who instituted this action in a representative capacity as trustee, was living in the state of New Jersey and at the same time his son, E. A. Henningsen, was living in China.

December 22, 1920, the plaintiff wrote to Mooney: "Can you obtain a good loan for $1,000 which is to be placed to the credit of E. A. Henningsen?" December

30, 1920, he sent the following letter to the Ladd & Tilton Bank of Portland:

"I have written to Mr. H. E. Mooney to obtain a $1,000 mortgage. Upon him securing such, as also presenting an approval by Mr. W. T. Turner, please apply check within to the same. This mortgage, upon all papers, inclusive Title Guarantee certificate being presented to you, is to be placed to the credit of Edward A. Henningsen."

January 7, 1921, Mooney replied to the plaintiff, stating:

"* * * I send for your inspection a mortgage of $1,000.00 I made to Hattie E. and H. W. Wells for my own account with personal funds. * * * Can furnish the Title Trust Co's certificate if necessary. * * * If I assign the note and mortgage to Edward A. Henningsen I would endorse the note as follows, viz: 'For value received I assign the within note to E. A. H. and guarantee prompt collection and payment of the principal and interest at the rate of 7% per annum, the additional 1% per annum to be retained as collection charges.' * * * Please return the enclosed mortgage with your reply."

The plaintiff testified that no mortgage accompanied the letter. January 18, 1921, in a letter to Mooney, he stated that he had written the bank to accept the transfer of the mortgage "from you to Edward A. Henningsen, you guaranteeing principal and interest, the mortgage thereby making 7%". His letter to the bank was dated January 10 and instructed it to purchase the mortgage after Turner had given his approval.

The mortgage described a small tract of land situated a few miles out of Portland. Turner inspected the land and expressed satisfaction. The purchase was completed January 25, 1921, in the following manner: Mooney wrote on the reverse side of the note the fol-

lowing endorsement: "For value received I assign the within note to Edward A. Henningsen and guarantee the prompt collection and payment of principal and interest at the rate of seven per centum—the additional per centum per annum to be retained as collection charges. H. E. Mooney." He then delivered the note and the mortgage, together with an assignment of the latter to E. A. Henningsen, to the Ladd & Tilton Bank. The bank then handed to Mooney the $1,000 which F. W. Henningsen had sent to it. Some time later Mooney delivered to the bank the policy of title insurance upon which this action is based. It names as the party insured H. E. Mooney and his assigns. It describes a tract of land which the Wellses had intended to describe in their mortgage. However, through an error, the mortgage described a tract of land which the Wellses did not own and this mistake escaped discovery until after the plaintiff had instituted a suit to foreclose the mortgage.

The mortgage assignment instrument above mentioned was never recorded. October 1, 1923, Mooney delivered to the bank another assignment of the mortgage, naming as the assignee F. W. Henningsen, Trustee, which the bank recorded January 2, 1925. When the second assignment was delivered to the bank the unrecorded assignment was returned to Mooney. Mr. E. C. Pierce, the official of the bank who handled this piece of business in its behalf, gave the following explanation: "The reason it was not recorded, Mr. Mooney had some arrangement with Mr. Henningsen whereby the mortgage or the assignment running to his son who lived in China it would take such a long time to get a release of the mortgage, and at the time we took over the note we notified—there was considerable correspondence between Mr. Mooney and Mr. Henning-

sen, and it was suggested that we take a new assignment to Mr. Henningsen, who was acting as trustee for his son.'' On the reverse side of the note under the above-quoted endorsement of Mooney's appears the signature ''Edward A. Henningsen''. The uncontradicted testimony of Pierce and F. W. Henningsen indicates that this signature is in Edward A. Henningsen's handwriting. The son did not testify. The evidence does not indicate, however, when this endorsement was placed upon the note. In a letter to the bank, dated September 8, 1923, E. A. Henningsen, referring to this note and mortgage, said: ''As I understand it, these papers show that F. W. Henningsen is the Trustee, so will appreciate it if you will take this matter up with him.'' He also referred to the trust in other letters.

The aforementioned note was dated June 30, 1920, and was payable at Mooney's office. It bore interest at the rate of 8 per cent, payable quarterly. After its execution the Wellses paid the interest at Mooney's office and he remitted the payments to the bank. They knew that the bank possessed the note and mortgage. March 16, 1921, they conveyed the property which they had intended to describe in the mortgage to Ross J. Todmen and wife. The deed of conveyance recited that the purchasers assumed and agreed to pay the mortgage. After the Todmens acquired ownership they paid the interest at Mooney's office. They did not know who owned the note and mortgage. In at least one of its letters to the plaintiff, the bank referred to the fact that the interest payments were being made to it by Mooney. Since the note provided that it was payable three years after date, payment of its principal was due June 30, 1923. In that month Mrs. Todmen inquired of Mooney whether the loan could be converted into a ''disappearing mortgage'' and, according to her testi-

mony, Mooney replied, ''I will have to write to my client and see if he will fix it that way.'' He told her to return in four weeks for an answer. About this time Mooney inquired of the plaintiff concerning his attitude toward an extension of time. The plaintiff's reply is the following: ''The matter of extending loan of $1,000 on ten acres in Clackamas Co. made by Edward A. Henningsen is entirely in your hands. If the loan is such that you still recommend it, it will be satisfactory that you extend the same.'' About this time Mooney effected an arrangement with the Todmens whereby they paid him $15 each month. He paid none of this money to the bank nor to the Henningsens, but quarterly remitted to the bank $20. These quarterly payments continued for about eight years so that in July, 1931, they had paid $897.45 toward the principal. The Todmens never required Mooney to produce either the note or the mortgage, and it is clear that after these instruments were deposited with the bank Mooney never again had them in his possession. He notified neither the bank nor the Henningsens of the fact that the Todmens were paying $15 a month, nor of the arrangement which he had concluded with them whereby they were making these payments. It is not altogether clear whether this arrangement contemplated that the portion of the $15 payment which exceeded interest requirements was to be applied upon the principal or whether the Todmens in this manner were creating a fund for the eventual retirement of the principal; but the Todmens apparently believed that they were reducing their debt.

Neither the Wellses nor the Todmens made any payments to the bank. The bank carried an account entitled ''F. W. Henningsen, Trustee'', and credited all payments received from Mooney to that account. Nei-

ther the plaintiff nor the bank knew that the Todmens were making these $15 per month payments until 1931. Prior to making this purchase the plaintiff had made eight other mortgage investments with Mooney. He swore that Mooney was not his agent, adding that he trusted Turner in each instance to determine the sufficiency of the security and the bank to close the transactions. He also swore that at the beginning of their business arrangements he instructed the bank to collect the interest installments and the principal when due.

After Mooney's death in November, 1930, his arrangement with the Todmens was discovered. His estate was insolvent, and no accounting has been made for any of the sums which he received from the Todmens except the quarterly interest payments. In 1931 the plaintiff instituted a suit to foreclose the mortgage and then discovered that it did not describe the property mentioned in the policy of title insurance. This suit was dismissed. Next, he instituted a suit to reform the mortgage. His prayer was denied. He then instituted the present action. It is conceded that the makers of the note are insolvent. The policy of insurance is dated July 6, 1920, and insures Mooney and his assigns against any loss in an amount not exceeding $1,000 which may be sustained through defect in the mortgagor's title or in the execution of the mortgage.

The contentions embraced in the assignments of error may be succinctly stated as follows: (1) If the above facts disclose that any one possesses a cause of action upon the policy of title insurance it belongs to E. A. Henningsen, and not to the plaintiff; and (2) Mooney was the agent of the holder of the note, and, therefore, the payments which the Todmens made to

him reduced the amount of the obligation to the extent of $897.50.

In support of its first contention, the defendant points out that the endorsement which Mooney wrote upon the note made it payable to the son, and that the first assignment of the mortgage which Mooney executed transferred the mortgage to the same individual. Then the defendant argues that the record contains no proof that E. A. Henningsen wrote the name "E. A. Henningsen" which appears upon the back of the note, and follows this contention with the statement that after Mooney had transferred the note and mortgage to the son he had no further interest in either instrument which could be transferred by the second assignment of the mortgage which, as we have seen, names as the assignee F. W. Henningsen, Trustee. Two witnesses, familiar with the son's signature, testified that the name E. A. Henningsen on the back of the note is the signature of the son. The findings of the circuit court referring to this signature, state: "The evidence sustains its genuineness." Hence, we are bound to believe that after the note had been transferred to the son he endorsed it. It is true that when Mooney delivered the note and mortgage to the bank he also handed to it an assignment of the mortgage running to the son. But this instrument was never recorded, and was shortly returned to Mooney. At the time it was returned he executed a new assignment naming as the assignee F. W. Henningsen, Trustee. The findings of the circuit court in reference to these matters state:

"The plaintiff purchased the note and mortgage with his own funds, and intended to have the papers held in the bank for the benefit of his son, Edward A. Henningsen, who was in China, and this was the understanding of both father and son as well as the bank. It was also well understood by the father and son and

the bank that the father was to hold the title as trustee, for the benefit of the son, in order that the father might sign any necessary papers or act with reference to the note and mortgage. In order to effectuate this intention of all persons concerned, under date of October 1, 1923, a new assignment of the mortgage was executed by Mooney in favor of F. W. Henningsen, Trustee.''

We believe that this finding is supported by substantial evidence. Thus after Mooney had made the note payable to the son the latter endorsed it in blank, making it payable to bearer. Later the first assignment of the mortgage, which the parties had treated as only tentative, was returned to Mooney who at the same time executed a new assignment to F. W. Henningsen, Trustee, which was promptly recorded. Some time after this the son wrote the letter previously quoted wherein he acquiesced in the trust arrangement. This was followed by other letters from the son which also manifested his satisfaction with the arrangement whereby his father held title to the note and mortgage as trustee. It is apparently true that at the outset the father contemplated that the title to the note and the mortgage which he was buying with his own money should be taken in the son's name, but we are satisfied that before these plans had been fully consummated the two Henningsens realized that it would be necessary occasionally to execute some instruments regarding this loan and that, since the son's business required him to travel over large areas in the Orient, embarrassing delays in the execution of the documents would be encountered. Thereupon the plans were changed and the father was substituted as trustee for the son.

Section 1-303, Oregon Code 1930, provides:

''An executor or * * * trustee of an express trust * * * may sue without joining with him the person for whose benefit the action is prosecuted. A

person with whom, or in whose name a contract is made for the benefit of another, is a trustee of an express trust within the meaning of this section."

The complaint alleges: "The plaintiff brings this action in his capacity as trustee of an express trust for the use and benefit of the beneficiary." It is our belief that, if a cause of action upon the policy of insurance arose out of the facts above related, the plaintiff is authorized to maintain it. The defendant argues, however, that the complaint is based upon a transfer of the note consummated January 25, 1921, and that the evidence does not support this averment. The allegation to which it refers alleges: "The plaintiff herein purchased from the said H. E. Mooney the note and mortgage referred to in said insurance policy and said note was thereafter on the 25th day of January, 1921, endorsed and assigned to the plaintiff and said mortgage was thereafter, to wit, on the 1st day of October, 1923, assigned and transferred to the plaintiff." Mooney's endorsement of the note is dated January 25, 1921, and it may be that Edward A. Henningsen's endorsement was not made on the same day. The assignment of the mortgage from Mooney to F. W. Henningsen, Trustee, was made upon the day alleged, that is, October 1, 1923. No difficulty developed upon the trial due to the inability of the plaintiff to prove the day when the son endorsed the note and we can not conceive how time could be a material element in the present action. The event was material but the time immaterial. The following authorities, we believe, support our conclusion that it was unnecessary for the plaintiff to prove time, as alleged: *Scott v. Lewis,* 40 Or. 37 (66 P. 299); *Kitchen v. Holmes,* 42 Or. 252 (70 P. 830); 5 C. J., Assumpsit, Action of, p. 1395, § 44. We do not believe that anything contained in *Thompson v. Rathbun,* 18

Or. 202 (22 P. 837), and *Sabin v. Mitchell*, 27 Or. 66 (39 P. 635), cited by the defendant is at variance with this conclusion. This first contention is, therefore, without merit.

 The next contention advanced by the defendant submits that Mooney was the agent of the owner of the note and that he possessed authority to collect both principal and interest. We believe that we have given in the preceding paragraphs a fair review of the evidence upon which the defendant relies to support this contention. Defendant claims that the several transactions in regard to mortgage loans, including this one, indicate that Mooney was the plaintiff's agent and that the agency was a general one. It contends that when the plaintiff accepted the benefit of Mooney's act in procuring the mortgage and of his services in collecting the interest he ratified Mooney's conduct in making the collections upon the principal.

Substantially the same contentions were placed before us in the case of *Tilton v. Boland*, 147 Or. 28 (31 P. (2d) 657), where the facts were very similar to those now before us. We deem it unnecessary to set forth herein a comparison of the facts of that case with those of the present one. We mention, however, the circumstance that in that case the alleged agent, as in this one, sold the note and mortgage to the investor. The relationship at that time was that of vendor and vendee. In that case, as well as in this, the alleged agent collected the interest and later effected an arrangement with the borrower, unbeknown to the investor, for payments upon principal. Before the alleged principal discovered the facts the alleged agent had become insolvent. Two important distinctions, however, between the two cases are deserving of special mention. In the Tilton case the alleged agent had possession of 12 instruments in

the form of interest coupons and, as in the present case, was entitled to keep part of the interest money. Next, in the Tilton case the instrument of assignment was recorded 17 days after the purchase while in the present case the note and mortgage were purchased January 25, 1921, but the instrument of assignment was not recorded until January 2, 1925. Section 54-105, Oregon Code 1930, provides:

"The recording of the assignment of a mortgage shall not in itself be deemed notice of such assignment to the mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them or either to the mortgagee."

Substantially the same enactment is in effect in other jurisdictions. We have examined many decisions of other jurisdictions where the same law is in effect and believe that its correct interpretation is stated in the following excerpt taken from 19 R. C. L., Mortgages, p. 358, § 129:

"If the obligation secured by a mortgage is a negotiable instrument the mortgagor is not justified as against an assignee of the mortgage in making payments to the mortgagee unless he requires the latter to produce the instrument, or unless payment is induced by unambiguous direction from the owner, or * * *. The rule obtains whether the assignment is for collateral security or is absolute, and although no record has been made thereof. And it is not altered by the existence of a statute providing that the recording of the assignment of a mortgage shall not be deemed notice to the mortgagor, so as to invalidate payments to the mortgagee. A statute of that character does not authorize the mortgagor to pay the mortgage to one not the holder of the negotiable obligation secured thereby, but it only means that the mortgagor shall not be required to search the record before making payment to the one *prima facie* entitled to receive it who, in case the mortgage is accompanied by a negotiable note, is the holder thereof. * * *"

Many decisions which sustain the statement just quoted are digested in 89 A. L. R. 197. It is our opinion that the statute does not entitle the mortgagor and the Todmens to credit for payments made to Mooney unless the evidence shows that Mooney was authorized by the Henningsens to receive such payments. In the Tilton case we held that one who claims credit for installment payments made to an alleged agent of the owner of the note must prove that the individual to whom the payments were made had express or apparent authority to receive them. We directed attention to the rule that unless the individual to whom payment is made possesses the note the obligor has the burden of proving that he had express or apparent authority to receive payment; or that the money paid actually reached the owner of the note. In that case we held that the purported agent was not the agent of the owner of the instrument.

We have carefully considered the appellant's brief and the authorities cited therein, many of which we read and studied while preparing the decision in *Tilton v. Boland*. We remain satisfied that that case was properly decided, and believe that the principles therein employed demand a conclusion that Mooney was not authorized by the plaintiff to collect the principal of the note. We are satisfied, however, that he had authority to make collections of interest money.

We have not overlooked the defendant's argument that Mooney was authorized to extend the time of payment of the loan, but even such authority would not confer authority to make collections of principal.

It follows from the preceding that the judgment of the circuit court must be affirmed.

KELLY, BEAN, BAILEY, RAND, JJ., concur.

CAMPBELL, C. J., and BELT, J., not sitting.