Argued May 11, affirmed as modified July 11, 1977

BAXTER, *Appellant,*
*v.*
REDEVCO, INC. et al, *Respondents.*
(TC 94426, SC 24657)

566 P2d 501

Peter S. Rudie, Salem, argued the cause and filed a brief for appellant.

Norman K. Winslow, Salem, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Holman, Howell, and Campbell, Justices.

CAMPBELL, J., Pro Tempore.

**CAMPBELL, J.,** Pro Tempore.

The plaintiff filed an action at law against the defendants to collect a $6,000 promissory note. The defendants' second amended answer admitted the execution of the note, the endorsements and delivery to the plaintiff, and denied that the note was due and owing. The answer further alleged affirmative equitable defenses of merger of the debt with its security and election of remedies.

Trial was held before the court without a jury on both the legal and equitable issues. The trial court did not enter either general or special findings of fact. It merely found that the defendants were entitled to a decree dismissing the plaintiff's complaint with prejudice and canceling the promissory note. The defendants were awarded attorney fees. We review the equitable issues de novo. ORS 19.125(3). If there are any legal issues our review is limited by Section 3, Article VII (amended) of the Oregon Constitution.

On September 21, 1972, the defendant Redevco, Inc., by and through its vice-president, William E. Colson, executed and delivered its demand promissory note in the amount of $6,000 to the defendant Colson and Colson Construction Company.[1] The latter defendant company owed the defendant Bruce Rosbach, a real estate broker, a real estate commission for property previously sold. Colson and Colson, by William E. Colson, then endorsed and delivered the $6,000 note to Rosbach as payment for the real estate commission.

On or about October 20, 1972, Rosbach discounted the promissory note to Tom F. Wilson for the sum of $3,300. Wilson required security for the note. Rosbach's wife, Barbara J. Rosbach, was the legal owner of residential type rental property in the Salem Heights area. She executed and delivered to Wilson a second trust deed covering the Salem Heights property

---

[1] The face of the note contained this wording:
"This note to be paid in full on or before January 29, 1973."

and securing the Redevco note in the amount of $6,000. The Salem Heights property was worth between $20,000 and $25,000. The balance of the first trust deed was approximately $11,500 to $12,300.

Approximately six months later, in April 1973, Rosbach went to William E. Colson and collected the face value of $6,000 of the promissory note in question. This is the same note which had been discounted, endorsed and delivered to Wilson. Rosbach did not have real or apparent authority to collect it. Wilson did not know that Rosbach had collected from Colson. Colson did not know that Rosbach had discounted the note to Wilson. Colson did not demand the surrender of the note. Rosbach then had received the total sum of $9,300 on the $6,000 note.

In August 1974 defendant Rosbach was in urgent need of cash. He had his wife sell the Salem Heights property to the plaintiff, C. Lynn Baxter, for the sum of $1,500, subject to the first and second trust deeds. The defendant Rosbach did not inform the plaintiff, Baxter, that he had already collected $6,000 from the defendant William Colson on the promissory note.

On February 18, 1975, Tom F. Wilson requested that the trustee sell the Salem Heights property because the grantor, Barbara J. Rosbach, had defaulted under the terms of the second trust deed. By August 27, 1975, Wilson and Baxter, through their lawyers, had reached a settlement. By way of compromise, Baxter paid Wilson the sum of $4,800.

The sum of $4,800 was tendered to Wilson's lawyer upon the definite conditions that Wilson endorse and deliver to Baxter the original promissory note of Redevco, Inc., in the amount of $6,000, and that Wilson satisfy as of record the second trust deed. These conditions were met, and this action was filed in March 1976.

The defendants by their joint answer have pleaded the affirmative equitable defenses of merger of the

debt with its security and election of remedies. The plaintiff argues that none of the defendants can ask for equitable relief because of the clean hands doctrine and the maxim that equity aids the vigilant. The plaintiff claims that the conduct of Rosbach comes within the clean hands rule and that the conduct of Colson and Colson Construction and Redevco, Inc., was not vigilant and therefore they are not entitled to the aid of equity.

2 Pomeroy's Equity Jurisprudence 91-92, § 397 (Symons 5th ed 1941), defines the maxim as to clean hands:

"* * * It says that whenever a party, who, as *actor*, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any custody." (Emphasis theirs.)

27 Am Jur 2d 667, § 136 (1966), explains:

"* * * The maxim and principle for which it stands signifies that a litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue."

In this case the defendant Rosbach, in October 1972, discounted the $6,000 note to Tom F. Wilson. Rosbach received net from Wilson the sum of $3,300. Then, in April 1973, Rosbach collected the face amount of the note from William E. Colson. In order to invoke the doctrine of clean hands the plaintiff must show that he was injured or damaged by the conduct of Rosbach.

"*Necessity for injury to complainant.*—The party to a suit, complaining that his opponent is in court with 'unclean hands' because of the latter's conduct in the transaction out of which the litigation arose, or with which it is connected, must show that he himself has been injured by such conduct, to justify the application

[ 121 ]

of the principle to the case. The wrong must have been done to the defendant himself and not to some third party." 2 Pomeroy's Equity Jurisprudence 99, § 399.

The plaintiff, Baxter, has not shown that he was injured by the conduct of Rosbach in collecting twice on the promissory note.

■ The defendants Hugh D. Colson and William E. Colson d/b/a/ Colson and Colson Construction, and Redevco, Inc., were not parties to any fraud or dishonesty in the double payment of the promissory note to Rosbach. William E. Colson was negligent in not demanding proof of possession of the promissory note before paying Rosbach and was further negligent in not demanding surrender and cancellation after payment. We do not think that this negligence, standing alone, forecloses the defendants Colson and Redevco under the maxim of "equity aids the vigilant." 27 Am Jur 2d 658, § 130 (1966). 2 Pomeroy's Equity Jurisprudence 169, § 418 (Symons 5th ed 1941).

We conclude that all defendants may raise, argue and pursue any affirmative equitable defenses that are available to them.

The question of the merger of a debt with its security is discussed generally in a number of Oregon cases: *Lothstein v. Fitzpatrick,* 171 Or 648, 138 P2d 919 (1943); *Penn Mut. Life Co. v. Nelson,* 170 Or 248, 132 P2d 979 (1943); *Smith v. Allen,* 144 Or 261, 24 P2d 1043 (1933); *Barber v. Hartley,* 136 Or 210, 298 P 226 (1931); *Katz v. Obenchain,* 48 Or 352, 85 P 617 (1906); *Watson v. Dundee M. & T. I. Co.,* 12 Or 474, 8 P 348 (1885). None of these cases has the specific fact situation which is before us in this case.

■ The general rule is that the doctrine of merger applies where the title to the note, mortgage or trust deed and the title to the security become united in the same person. *Barber v. Hartley, supra.* This rule is limited by the intent of the parties. *Lothstein v. Fitzpatrick, supra.* The plaintiff's chief argument here

[ 122 ]

is that he did not intend that there should be a merger when he purchased the note and the second trust deed from Wilson in August of 1975. The general law supports the plaintiff's argument:

"Where the owner of premises acquires an outstanding mortgage thereon, his intention is the controlling factor as to whether there is a merger. If his intention has been expressed, it controls. In the absence of such an expression, the intention will be presumed from what appears to be his best interest as shown by all the circumstances." Annotation, 46 ALR 322 (1927).

*See also* 59 CJS 677, Mortgages § 440 (1949), and 55 Am Jur 2d 1103, Mortgages § 1404 (1971).

However, Osborne on Mortgages 551, § 274 (2d ed 1970), specifically says that intention is not controlling in this type of case:

"* * * If the mortgage creditor assumed payment of the mortgage there will be merger of the entire debt without regard to his intention. *So, too, up to the value of the land, if he took the property subject to the mortgage.*" (emphasis added)

Osborne explains this further at pages 554 and 555:

"If the grantee had taken subject to the mortgage without assuming its payment the only one personally liable is the mortgagor. Where such a grantee takes an assignment of the mortgage, as a general rule the debt secured by the mortgage is held to be extinguished and personal liability on it cannot be enforced. Up to the value of the land there would seem no question as to the result. The mortgagor is surety only and the land principal with the result that, to prevent circuity the mortgagor could defeat any recovery up to that amount, and this is true regardless of whether the mortgage is acquired for value or as a gift. Where the debt exceeds the value of the land a question may arise as to the right of such a grantee-assignee to recover a deficiency. If the grantee paid the amount of the debt for the assignment, the mortgagor should be able to insist that it constituted payment of the debt rather than purchase of it. *The reason is that, although the grantee incurred no personal obligation to pay off the mortgage, nonetheless when he*

[ 123 ]

*bought the land subject to it, his bargain included as a part of the price the amount of the mortgage debt.* As a consequence, even though the mortgagor could not compel him to pay and the mortgage creditor has no right against him personally, yet it is so far his duty to discharge the debt that if he does so he should have no recourse against the mortgagor for reimbursement. It would seem, therefore, that regardless of the value of the land, when a grantee subject to the mortgage buys in the mortgage, he cannot enforce any right on it against the mortgagor." (emphasis added)

■ This case fits Osborne's text. In August 1974, when the plaintiff purchased the Rosbach property, he did so subject to "a first and second Trust Deeds." In August 1975, when the plaintiff settled with Wilson, he in effect purchased the Redevco promissory note and the second trust deed which it secured. Although the plaintiff grantee incurred no personal obligation to pay off the note and second trust deed, nevertheless when the plaintiff bought the Rosbach property subject to them, his bargain included as a part of the price the amount of the note and the second trust deed.[2]

The law as set out by Osborne, *supra,* is supported by 2 Glenn on Mortgages 1160, § 258.1 (1943):

"The same result attends payment by a nonassuming grantee,—that is, one who has taken subject to the mortgage without agreeing also to pay it. He is an indemnitor just the same, because he holds the land as primarily bound for the mortgage debt. And, having deducted this debt from the purchase price he paid, the grantee cannot now require the mortgagor to pay the debt or any part of it. Accordingly, a merger takes place when the non-assuming grantee pays the mortgage, for

[2]The deed from Barbara J. Rosbach to the plaintiff recites that it is subject to "first and second Trust Deeds in the approximate amount of Eighteen thousand three hundred dollars." A second trust deed was in the principal amount of $6,000. A copy of the first trust deed was never introduced into evidence, but its principal balance was in the approximate sum of $11,500 to $12,300. The value of the security was estimated to be between $20,000 to $25,000. The plaintiff paid Rosbach $1,500 for the property subject to the two trust deeds. Thus the plaintiff did take into consideration the $6,000 note and second trust deed when he computed the amount that he would pay Rosbach for the property.

[ 124 ]

there is no just reason why he should seek to keep it alive."

We find that there was a merger of the debt with the security as to the plaintiff and the defendant Bruce Rosbach.

■ Redevco and Colson and Colson are responsible upon the note because they were not parties to the merger. However, Baxter cannot recover from them because to do so would give him a windfall to the detriment of Rosbach,[3] whose property was mortgaged to secure the obligation upon which Baxter is suing and which property was sold by Rosbach to Baxter, with a deduction in the price because of the mortgage. Therefore, the note, normally, would be held by Baxter for the benefit of Rosbach, who has, in effect, paid the note by the loss of his interest in the property covered by the mortgage. However, by illegal self-help, Rosbach collected the note from Colson and Colson, who thereby stepped into Rosbach's shoes, and Baxter therefore holds the note for their benefit because they have paid the obligation represented by it. Having sued in his own right, instead of for the benefit of Colson and Colson, Baxter cannot recover. We hold that Colson and Colson are the beneficial owners of the obligation of Redevco.

Because of this result we do not reach the question of the election of remedies.

The decree of the trial court is affirmed, except that the promissory note of September 21, 1972, in the amount of $6,000, will be delivered to Colson and Colson.

_____
[3]This opinion treats Rosbach and his wife as an entity.