
In re COLUMBIA PACIFIC MORTGAGE, INC., Debtor.

Murray L. JOHNSTONE, Sr., and Irene M. Johnstone, his wife, Plaintiffs,

v.

John MILLS, Trustee for Columbia Pacific Mortgage, et al., Defendants.

and

First National Bank of Oregon, an Oregon corporation, Defendant.

Bankruptcy No. 80-01590.
Adv. No. A81-0381.

United States Bankruptcy Court,
W. D. Washington.

Feb. 22, 1982.

Carl B. Goodwin, Jr., Short & Cressman, Seattle, Wash., for Community Federal Savings & Loan.

Ronald J. Trompeter, Beresford, Booth & Baronsky, Seattle, Wash., for First Nat. Bank of Or.

Willard Hatch, Quigley, Hatch, Loveridge & Leslie, Seattle, Wash., for Smiths.

Charles R. Eckberg, Lane, Powell, Moss & Miller, Seattle, Wash., for Mills, trustee for Columbia Pacific Mortgage, Inc.

SAMUEL J. STEINER, Bankruptcy Judge.

FACTS & NATURE OF ACTION

The debtor, Columbia Pacific Mortgage (CPM), a private mortgage lender in Richland, Washington, had lines of credit with several banks, including the defendant, First National Bank of Oregon (FNB). When CPM originated a loan, it drew on its line of credit for the funds with which to make the loan, received a promissory note secured by a deed of trust on realty from the borrower, and then assigned and delivered the note and deed of trust to the line bank as security for the line of credit.

In May of 1979, Backus, a contractor in the Portland, Oregon area, borrowed funds

from CPM to construct a house. CPM drew on its line of credit with FNB for the funds. In return for the loan, Backus executed a non-negotiable[1] promissory note and deed of trust (on the subject property) in favor of CPM. CPM recorded the deed of trust and then assigned and delivered the note and deed of trust to FNB. FNB neither recorded the assignment of the deed of trust, nor gave notice of the assignment to Backus.

Backus finished the house in the fall of 1979 and negotiated a sale to the plaintiffs, the Johnstones. Lawyers Title Insurance Corporation of Portland, Oregon, acted as title insurer and escrow agent for the closing. The title search revealed the deed of trust in favor of CPM as an encumbrance against the title.

The Johnstones deposited the purchase price into the escrow along with instructions to pay the indebtedness out of the proceeds at closing. Lawyers Title contacted CPM, with whom it had no prior dealings, requested a pay-off figure, and was advised of the amount necessary to satisfy the obligation. Lawyers Title understood that upon receipt of the funds, the original note and a reconveyance of the deed of trust would be forthcoming. CPM charged a "release fee" of $21 for this transaction, but never mentioned to Lawyers Title that the note and deed of trust had been assigned and were in FNB's possession.

In November of 1979, Lawyers Title closed the sale, sending to CPM the funds necessary to satisfy the note and deed of trust. CPM did not forward the funds to FNB and has never done so. Several months after closing, Lawyers Title discovered that the documents were in the possession of FNB and demanded that the note be satisfied and that a reconveyance of the deed of trust be executed and delivered to it. FNB has refused to do so.

The facts further indicate that it is often the custom or practice in the banking industry in the Portland area not to record assignments of notes and deeds of trust between a loan originator and its line bank. Further, it is the local custom of escrow companies, when dealing with institutional lenders, to close escrows without having the original loan documents in their possession. This custom is premised upon the assumption that institutional lenders will forward the documents upon receipt of the funds. Finally, the real estate industry in the area, in regard to reconveyances of deeds of trust securing promissory notes, does not distinguish between negotiable and non-negotiable notes.

On July 10, 1980, CPM filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code, and converted it to a Chapter 7 on August 13, 1981.

The Johnstones commenced this action, seeking a declaration that the note from Backus to CPM has been satisfied and to compel a reconveyance of the deed of trust, and have moved for summary judgment.

## ISSUE & CONTENTIONS OF PARTIES

The issue presented is whether the Johnstones' payment to CPM rather than to FNB discharged Backus' obligation to CPM when the obligation was evidenced by a promissory note and deed of trust that had been assigned, delivered to, and were in possession of FNB. Stated another way, does "final" payment to the assignor of a non-negotiable promissory note and deed of trust discharge the obligation (as to the assignee) when the obligor's purchaser pays without requiring production of the documents, even though the assignee did not record the assignment?

The Johnstones argue that the Backus note was non-negotiable and payable to CPM; that it was assigned and delivered to FNB as security; that Backus had neither actual nor constructive notice of the assignment; that to protect itself as to third parties, FNB was required to record the assignment of the deed of trust; and inasmuch as Backus, Lawyers Title, and the Johnstones had no record or actual notice of the assignment or any reason to suspect the assignment, payment to CPM in the amount of the pay-off quotation and in accordance with local custom[2] discharged Backus' obligation to CPM. Accordingly, the debt se-

---

1. The promissory note was "subject to" two other agreements and, thus, was non-negotiable pursuant to Or. Rev. Stat. § 73.1050(2)(a) (1981).

2. As stated previously, the local custom practiced by escrow companies was to close real estate transactions without requiring production of the loan documents representing encumbrances on the property *if* the encumbrancer was an institutional lender.

cured by the deed of trust has been satisfied and CPM and FNB must execute and deliver a reconveyance of the deed of trust.

FNB, on the other hand, asserts that because it had a perfected security interest in the note and deed of trust by possession, the Johnstones, through their escrow agent, acted at their peril in closing without production of the loan instruments. FNB further argues that Lawyers Title, an entity sophisticated in real estate dealings and knowledgeable in real estate financing, knew or should have known that CPM had or might have assigned the note and deed of trust and that such an assignment may not have been recorded. Hence, the Johnstones' escrow agent should have secured possession of the note and a reconveyance of the deed of trust before closing to ensure discharge of the obligation and, thus, removal of the encumbrance. Finally, FNB alleges the existence of genuine issues of material facts that would preclude summary judgment in favor of the Johnstones.

## DECISION

Because the Backus note specifies Oregon law as the applicable choice of law in determining the parties' rights under the note and deed of trust, this Court will apply Oregon law in determining whether the debt has been discharged by payment to the assignor, CPM.

■ It is clear that by possession of the note and deed of trust, FNB had a perfected security interest in the Backus-CPM loan. Or. Rev. Stat. § 79.3040(1) (1981) "A security interest in . . . instruments . . . can be perfected only by the secured party's taking possession . . ."; an instrument is a negotiable instrument or "any other writing which evidences a right to the payment of money and is . . . of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment." Or. Rev. Stat. § 79.1050(1)(i) (1981).) *See In re Staff Mtg. & Inv. Corp.,* 625 F.2d 281 (9th Cir. 1980) (recording of

assignment insufficient; secured party must take possession to be perfected). FNB, in fact, had done everything required by the Oregon Uniform Commercial Code to perfect its security interest and was not legally required to record. Such a recording may or may not have given constructive notice;[3] but as a means of perfection, it would have been meaningless.

Plaintiffs assert that possession of the note and deed of trust by FNB is irrelevant to a determination of whether FNB, rather than CPM, had a right to receive payment. Plaintiffs concede, however, that had the promissory note been negotiable, payment without production would have been at their peril. Or. Rev. Stat. § 73.6030(1) (1981). *See Tilton v. Boland,* 147 Or. 28, 31 P.2d 657 (1934); *Christian Community of Universal Brotherhood v. Graf,* 137 Or. 638, 1 P.2d 596 (1931); *Bamberger v. Geiser,* 24 Or. 203, 33 P. 609 (1893). It also is undisputed that the real estate industry, in regard to reconveyances of deeds of trust securing promissory notes, does not distinguish between negotiable and non-negotiable notes. Further, the real estate industry considers promissory notes and deeds of trust to be symbols of indebtedness and property interests; hence, possession of a note is regarded as strong evidence of its ownership. Indeed, the deed of trust and the reconveyance portion thereof in the case at bar *require delivery* of the note and deed of trust prior to reconveyance.

■ Inasmuch as the note and deed of trust are considered symbolic writings, must production of these instruments be required to discharge the debt? The general rule is that, absent notification of the assignment, payment to the assignor discharges the obligation. 3 Restatement of Contracts (Second) § 338(1) (1981). Notwithstanding this general rule, payment to the assignor does not discharge the obligation if the debt is represented by a writing "of a type customarily accepted as a symbol or as evidence of the right assigned." *Id.*

---

**3.** *See Henningsen v. Title & Trust Co.,* 151 Or. 318, 49 P.2d 458 (1935) (law providing that recording of assignment of mortgage is not in itself notice to mortgagor does not authorize mortgagor to pay without requiring production of the instrument).

§ 338(4). The comments to this section not only indicate that non-negotiable notes ("instruments") constitute symbolic writings, but also set forth the rationale for treating symbolic writings differently than non-symbolic writings:

"[A]n obligor who renders performance without requiring production of such a symbolic writing takes the risk that the person receiving performance does not have possession of the writing either because he has assigned it or because his right is defective. *Non-production has the same effect as receipt of notification of [the] assignment or reason to know of a defect in an assignee's right.*" *Id.* Comment h (emphasis added).

The Oregon Supreme Court, in *Baxter v. Redevco, Inc.*, 279 Or. 117, 566 P.2d 501 (1977), without indicating whether the note secured by the deed of trust was negotiable or non-negotiable, seems to have adopted the above rationale in a case wherein the obligor paid the assignor who failed to inform him that the note had been discounted and delivered to the assignee: "Colson [the obligor] was negligent in not demanding proof of possession of the promissory note before paying Rosbach [the assignor] and was further negligent in not demanding surrender and cancelation [sic] after payment." *Id.* at 122, 566 P.2d at 503.

■ Article 9 of Oregon's U.C.C. provides additional support for the conclusion that the plaintiffs acted at their peril in forwarding funds to CPM without requiring production of the instruments. Or. Rev. Stat. § 79.3180(3) (1981) requires the assignee to notify an account debtor (one obligated on an account, chattel paper, or general intangible) of the assignment to preserve its right to payment. By negative implication, the assignee of an *instrument* need not actually notify the obligor on the instrument—mere possession of the instrument preserves the right to payment. This conclusion is reinforced by the fact that a secured party/assignee of an instrument can perfect only by taking possession, a requisite stemming from business usage and custom: "Businessmen and bankers are accustomed to dealing with these pieces of paper [instruments] without referring to a filing system. And instruments ... such as promissory notes have long been treated as the complete embodiment of the underlying right." J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code 935 (2nd Ed. 1980). Likewise, in *Assets Realization Co. v. Clark*, 205 N.Y. 105, 98 N.E. 457 (1912), on similar facts the court held that when final payment is made "the evidence of the debt naturally and ordinarily is produced and delivered, and therefore the failure to do this in the absence of sufficient explanation constitutes notice which makes the payment or transaction unavailing as against a prior assignment although unrecorded." Finally, assuming notification was necessary in the instant case, title insurers and escrow agents arguably have "reason to know" an assignment exists when the note and deed of trust are not produced, particularly in light of their sophistication in real estate dealings. *See* Or. Rev. Stat. § 71.-2010(25)(c) (1981).

Plaintiffs contend that because payment was made in accordance with local custom requiring instrument production only when a non-institutional lender is involved, such payment thereby discharges the obligation. Although the court recognizes that it is the policy of the U.C.C. to promote commercial practices through custom and usage of trade, Or. Rev. Stat. § 71.1020(2)(b) (1981), it also is apparent that a local custom cannot destroy or negate the rights of a perfected secured party. 21A Am. Jur. 2d *Customs and Usage* § 14 (1981). Even if local custom could override a statute, it is not clear whether CPM was within the custom's definition of an institutional lender.

Plaintiffs also assert that because Or. Rev. Stat. § 79.5020(1) *allows* a secured party, when its assignor defaults, to notify the obligor of the instrument to make future payments to it, such notification is *required* upon default. Plaintiffs, however, have read a mandatory requirement into permissive language.

## CONCLUSION

FNB had and still has a perfected security interest in the loan, and it was and is entitled to have the interest satisfied before being compelled to deliver and/or record a reconveyance.

The forwarding of funds to CPM did not satisfy the security interest; and the Johnstones, through their agent, Lawyers Title, acted at their risk in closing the escrow without obtaining possession of the note and a reconveyance of the deed of trust.

Accordingly, the motion for summary judgment will be denied.

Counsel for the defendant may present an Order consistent herewith upon due notice.