Argued and submitted April 23, affirmed August 6, 1986

# SAFECO TITLE INSURANCE
# COMPANY OF OREGON,
*Respondent,*

*v.*

# KIRTLEY et al,
*Appellants.*

## (84-568-NJ-1; CA A35609)

723 P2d 1027

Kelly L. Andersen, Central Point, argued the cause for appellants. With him on the brief was Richardson & Andersen, Central Point.

Gary L. Vigna, Portland, argued the cause for respondent. With him on the brief was Howe & Harris, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, P. J.

## WARDEN, P. J.

Plaintiff brought this action seeking a declaration of the respective rights of plaintiff and defendants in a parcel of real property. The trial court found that a deed to defendants was actually a mortgage and that, after the subsequent delivery of an estoppel deed to defendants by the mortgagor, their interest as mortgagees merged with their fee interest in the land. As a result, defendants' interest emanating from the estoppel deed became junior to plaintiff's interest under a trust deed. Defendants appeal from the judgment, assigning error to the declaration of merger.

There is no substantial dispute as to the facts. In late December, 1980, or early January, 1981, Mark Hixson was introduced to defendants. He wished to borrow $25,000 and offered the property in question as security. Defendants loaned Hixson $25,000, less a $2,500 loan fee, so that he actually received $22,500. In return, Hixson gave a warranty deed, conveying the real property to defendants, intending it to be only security for the loan. As a part of the transaction, defendants gave Hixson an option to repurchase the property within one year for $29,500 or to extend the option to two years on payment of an additional $7,000. Defendants recorded the warranty deed on February 19, 1981.[1]

Defendants had previously entered into several similar loan transactions involving deeds with repurchase options. Some of those transactions had been challenged in the recent past by the grantees and, in at least one case, the deed had been construed to be a mortgage.[2]

On October 19, 1981, Hixson executed a trust deed to the same property in favor of Klass to secure a promissory note for $18,500. Klass obtained from plaintiff a policy of title insurance which failed to disclose defendants' warranty deed. When Hixson failed to make payments required by the trust deed and the trustee initiated foreclosure, plaintiff's error was discovered, and it was required to pay Klass $18,500 under the

---

[1] The trial court's finding, declaring the warranty deed to be a mortgage, is not disputed by defendants on appeal.

[2] Defendants' apparent goal in structuring the transactions as they did was to avoid the statutory foreclosure procedures and to obtain tax benefits by characterizing what was in fact interest as capital gain rather than as ordinary income.

title insurance policy. Klass assigned his interest, as beneficiary under the trust deed, to plaintiff on January 5, 1983, and the assignment was recorded on April 16, 1983.

Having become aware of plaintiff's interest, and in the light of the previous legal challenges to the deed and repurchase option transactions, defendants entered into an "estoppel agreement and deed" with Hixson, conveying "all interest he may have" in the property to defendants. William Kirtley testified that his sole intention was to clarify his claim to the Hixson property and to convince plaintiff that "they didn't have any right to the property." Defendants contended that any interest of plaintiff under the trust deed was void, because Hixson had no title to the property and could not encumber it with the trust deed.

Plaintiff initiated this action on April 7, 1983, alleging *inter alia* that the warranty deed from Hixson to defendants was really a mortgage. After becoming aware of the estoppel deed, plaintiff amended its complaint to allege that defendants' interest emanated from the estoppel deed given after plaintiff's trust deed and was therefore subject to plaintiff's interest arising out of the trust deed.

■ Defendants' first assignment is that the trial court erred in declaring a merger of their interests as mortgagees and as grantees in the estoppel deed. The general rule was stated in *Baxter v. Redevco,* 279 Or 117, 122, 566 P2d 501 (1977):

> "[T]he doctrine of merger applies where the title to the note, mortgage or trust deed and the title to the security become united in the same person. This rule is limited by the intent of the parties." (Citations omitted.)

The court in *Baxter* went on to note that, in the absence of an expression of intent, intent will be presumed from what appears to be in the best interest of the party in whom the estates would merge. *Baxter v. Redevco, supra,* 279 Or at 123. Thus, when the interests of the owner are best served by keeping the mortgage alive, equity will presume that intention. *See Barber v. Hartley,* 136 Or 210, 298 P 226 (1931); *Katz v. Obenchain,* 48 Or 352, 85 P 617 (1906); *Watson v. Dundee M & T. I. Co.,* 12 Or 474, 8 P 348 (1885).

The expressed intention was to affirm that the earlier

warranty deed was in fact a conveyance. Defendants' contended in the trial that the warranty deed was a conveyance and not a mortgage.[3] Their intentions were not expressed with respect to merger, because they refused to acknowledge that the warranty deed was in fact a mortgage. However, we can presume that defendants did not intend to relinquish their senior position vis-a-vis the plaintiff's lien.

■ Although the general rule appears to favor defendants' argument, there are exceptions. One is that "a court of equity will not prevent a merger where to do so would effect a fraud or other wrong." 59 CJS 524, *Mortgages,* § 367. That is inherent in the principle that a court of equity, after determining where the equities lie, will fashion a remedy which it deems necessary and appropriate. *Stan Wiley v. Berg,* 282 Or 9, 21, 578 P2d 384 (1978). The exception was recognized by the Supreme Court in *Geary v. Porter,* 17 Or 465, 21 P 442 (1889).[4]

■ It is obvious from the trial judge's comments that he did not find William Kirtley's testimony regarding the loan to Hixson and the subsequent estoppel deed credible. Although our review of a case in equity is *de novo,* we give considerable weight to a trial court's credibility determination. *Hendricks and Hendricks,* 65 Or App 93, 670 P2d 196 (1983); *French v. Boese,* 50 Or App 369, 378, 623 P2d 1070, *rev den* 291 Or 1 (1981). The trial judge stated in his memorandum opinion:

> "The Court * * * finds that the subsequent estoppel deed was not taken for any purpose of clarifying original intentions but was simply one more effort by the Kirtleys to manipulate a situation to their advantage. The original warranty deed was taken by them to attempt to avoid the application of usury laws; to avoid the interest on a loan being taxed to them as ordinary income by attempting to convert it to a long term capitol [*sic*] gain, and to avoid the rights of a mortagee [*sic*] to the usual foreclosure proceedings. When taking the subsequent estoppel deed the Kirtleys were attempting to convert the security arrangement into an absolute sale of the property which it was not. At the same time it is clear the Kirtleys

---

[3] Defendants' position was taken in the face of almost overwhelming evidence to the contrary. After listening to William Kirtley's testimony, the trial judge noted:

"I am just really puzzled that defendants are even here contending that this was a Deed that was intended as an actual conveyance."

[4] *See also* 59 CJS 106, *Mortgages,* § 60, *citing Geary v. Porter, supra.*

made a mistake. It was never their legal intention to tie their interest in the property to the date of the estoppel deed. Their intention was to try to in effect persuade that the original security transaction was really a deed, *in effect an effort to mislead.*" (Emphasis supplied.)

The judge went on to conclude that to deny a merger would only validate the manipulations of defendants. He refused to lend the aid of a court of equity to the improper conduct, and he was correct in so refusing.[5]

Defendants rely on *Herrman v. Churchill,* 235 Or 327, 385 P2d 190 (1963), in support of the second assignment that, before plaintiff can obtain equitable relief, it must show a willingness to do equity by paying the debt secured by the warranty deed. In *Herrman,* the plaintiff had begun the action to recover possession of land that had been conveyed to him by deed from the defendants. The defendant grantor asked the court to declare that the deed was a mortgage given to secure a debt due to the plaintiff. The court decided that the deed was in fact a security instrument, entered a judgment for the plaintiff for the amount owed by the defendant and decreed that the defendant had a right to redeem the property by repaying the debt.

The case at bar is much different. Plaintiff is not a debtor of defendants seeking to redeem the land in equity. Plaintiff owes no debt to defendants, and defendants took the estoppel deed with knowledge of plaintiff's claim. Creditors of a grantor may show in equity that a deed was, in fact, intended as a mortgage. *See* 59 CJS 106, *Mortgages,* § 60. As in *Baxter v. Redevco, Inc., supra,* defendants, as grantees, took the property subject to plaintiff's interest. That defendants paid off an unrelated first mortgage on the property, as well as paying the taxes and insurance on the property, does not affect plaintiff's rights. Those expenditures were made by defendants to protect their own interest in the property. They have not lost their investment; they now own the property, subject to the lien of plaintiff's beneficial interest in the trust deed.

---

[5] The trial judge made reference to the "unclean hands" doctrine as precluding a finding in favor of defendants. Although the result is not technically within the realm of the "clean hands doctrine," the correctness of the decision is unaffected by the mislabeling. *See Gratreak v. North Pacific Lumber Co.,* 45 Or App 571, 575, 609 P2d 375, *rev den* 289 Or 373 (1980).

Affirmed.