**MEDFORD PACIFIC, a Hawaii limited partnership, Plaintiff,**

v.

**DANMOR CONSTRUCTION, INC., The Danmor Company, Danmor Properties, Inc., and T. Dan Mortimer, Defendants.**

No. Civ. 97–697–FR.

United States District Court,
D. Oregon.

Jan. 29, 1998.

Donald J. Churnside, Gaydos, Churnside & Walro, P.C., Eugene, Oregon, for Plaintiff.

James H. Gidley, Todd M. Peck, Ronald T. Schaps, Pro Hac Vice, Bogle & Gates P.L.L.C., Portland, Oregon, for Defendants.

## OPINION

FRYE, District Judge.

The matter before the court is the defendants' motion for partial summary judgment (# 39).

## FACTS

In 1974, the plaintiff, Medford Pacific, an Hawaiian limited partnership, responded to an advertisement placed by defendant Danmor Construction, Inc. (Danmor) which was seeking investors for the development of nursing home facilities.

Medford Pacific agreed to invest $325,000 in a Danmor project to finance, construct and operate a nursing home facility on a parcel of property in Medford, Oregon (the Medford property). The annual rate of return to Danmor on the investment was to be 12%.

In anticipation of the project, Danmor obtained interim financing on October 1, 1974.

On November 5, 1974, Danmor signed an Earnest Money Receipt and Agreement to sell to Medford Pacific the Medford property commonly known as Madison House. The selling price for this property was $1,300,000, with $325,000 cash to be paid by Medford Pacific at closing. The remaining $975,000 of the selling price represented the existing construction mortgage loan on the property. The Earnest Money Receipt and Agreement required that the permanent first mortgage be obtained by March 1, 1978. The Earnest Money Receipt and Agreement further provided for the execution of a lease agreement between Medford Pacific and Danmor at the completion of the nursing home facility. The property was appraised in September of 1974 at $1,350,000.

The transaction was structured as a sale and leaseback in order to obtain certain tax advantages for Medford Pacific's investors in the initial transaction. Due to tax considerations, Medford Pacific required that it take the property subject to the mortgages rather than by assumption of the mortgages.

On January 22, 1975, Danmor deeded the property to Medford Pacific.

Effective February 1, 1975, Medford Pacific and Danmor entered into a lease agreement, whereby Danmor leased the Medford property to Medford Pacific. The lease agreement provided for a monthly lease payment from Danmor to the lessor, Medford Pacific, of $3,250. The lease agreement provided that Danmor was responsible for all other costs associated with the property, including the present mortgage indebtedness to Lincoln Savings and Loan Association in the amount of $975,000, and that Danmor had the right to refinance the property at any time provided that the total encumbrances on the property did not exceed $1,025,000. The initial term of the lease was ten years, with an option for four more ten-year leases. The first three ten-year options were to be exercised at Danmor's sole discretion. The remaining, fourth ten-year option was to be exercised at Medford Pacific's sole discretion.

On January 28, 1976, Danmor obtained a mortgage from Lincoln Savings and Loan Association secured by the Medford property in the amount of $1,025,000. The signature of Medford Pacific does not appear on this mortgage. However, Medford Pacific al-

lowed the property to be pledged as security for the loan to Danmor as Medford Pacific had agreed in the Earnest Money Receipt and Agreement and in the lease agreement.

On May 4, 1976, the deed given to Medford Pacific on January 22, 1975 was recorded.

On May 8, 1981, Danmor executed a second note and mortgage in favor of Lincoln Savings and Loan Association in the amount of $330,000 secured by the Medford property. Medford Pacific signed this second mortgage pledging the Medford property as security. Medford Pacific did not become personally obligated on this second note.

On January 23, 1985, Danmor exercised its option to extend the original lease for an additional ten-year period through January 21, 1995.

On January 31, 1995, the lease on the Medford property expired by its own terms because Danmor declined to exercise further lease options.

On February 1, 1995, Medford Pacific subleased the Medford property to a third party.

On April 28, 1995, Medford Pacific paid the sum of $862,090.98 to the Bank of America, the holder of the outstanding obligations secured by the Medford property, in order to avoid foreclosure.

Medford Pacific brings this action to recover the sums it paid to satisfy the mortgage balances remaining after the expiration of the lease.

## CONTENTIONS OF THE PARTIES

The defendants move the court for partial summary judgment on Counts I, III, IV and VII of Medford Pacific's complaint and on those portions of Counts II, VI, VII and IX which do not involve the condition of the roof at the time the lease expired. The defendants contend that the doctrine of merger precludes the claims of Medford Pacific for the sums paid to satisfy the mortgage balances. The defendants explain that when Medford Pacific purchased the property from Danmor subject to certain encumbrances, and then later paid off the balance due on those encumbrances, the debt merged with the security, and Medford Pacific has no claim against Danmor for the sums paid.

Medford Pacific contends that the doctrine of merger does not apply in this case. Medford Pacific contends that the continued involvement of Danmor in the property and the use by Danmor of the mortgage money makes Danmor a surety, and the doctrine of merger does not apply.

Medford Pacific contends that it was only an investor, and that neither the Earnest Money Receipt and Agreement nor other documents state that Medford Pacific is purchasing the property subject to the mortgage. Medford Pacific explains that an entity with fee simple title to real estate may allow another entity to use that property as security for a loan to the non-owner entity. Medford Pacific contends that Danmor was primarily liable for the loans, and that Medford Pacific was secondarily liable for the loans. As secondarily liable for the loans, Medford Pacific contends that it has recourse as a surety against the primarily liable entity, Danmor.

## APPLICABLE LAW

■ The general rule is that the doctrine of merger applies where the title to the note, mortgage or trust deed and the title to the security become united in the same person. *Barber v. Hartley*, 136 Or. 210, 298 P. 226 (1931). This rule is limited by the intent of the parties. However, "[i]f the mortgage creditor assumed payment of the mortgage there will be merger of the entire debt without regard to his intention. So, too, up to the value of the land, if he took the property subject to the mortgage." *Baxter v. Redevco, Inc.* 279 Or. 117, 123, 566 P.2d 501 (1977), *quoting* Osborne On Mortgages 551, § 274 (2d ed 1970) (emphasis omitted). The Court in *Baxter* went on to quote the following explanation from Osborne on Mortgages at pages 554 and 555:

> The reason [that the entire debt is merged] is that, although the grantee incurred no personal obligation to pay off the mortgage, nonetheless when he bought the land subject to it, his bargain included as a part of the price the amount of the mortgage debt. As a consequence, even though the mortgagor could not compel him to pay and the mortgage creditor has no right

against him personally, yet it is so far his duty to discharge the debt that if he does so he should have no recourse against the mortgagor for reimbursement. It would seem, therefore, that regardless of the value of the land, when a grantee subject to the mortgage buys in the mortgage, he cannot enforce any right on it against the mortgagor.

279 Or. at 123–24, 566 P.2d 501 (emphasis omitted).

### RULING OF THE COURT

■ While Medford Pacific contends that it was "only an investor," the transaction the parties engaged in was a sale and leaseback of the Medford property. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, p. 3. The Earnest Money Receipt and Agreement between Medford Pacific and Danmor acknowledges that the purchase price of $1,300,000 consisted of $325,000 cash at the time of closing and the existing $975,000 mortgage. The appraised value of the property at the time that the Earnest Money Receipt and Agreement was signed was $1,350,000. The Earnest Money Receipt and Agreement and the lease agreement provided that permanent financing up to $1,025,000 would be secured by Danmor on the property no later than March 1, 1978. On January 22, 1975, Medford Pacific received the deed for the property.

On January 28, 1976, Danmor obtained a mortgage for permanent financing in the amount of $1,025,000. This mortgage was in the name of Danmor but was secured by the Medford property owned by Medford Pacific. Medford Pacific agreed to this specific encumbrance in both the Earnest Money Receipt and Agreement and in the lease agreement. On May 8, 1978, Medford Pacific signed the second mortgage, making the property subject to the second mortgage. The court finds that Medford Pacific owned the property at all times subject to the first and second mortgages.

The doctrine of merger provides that "when a grantee subject to the mortgage buys in the mortgage, he cannot enforce any right on it against the mortgagor." *Baxter*, 279 Or. at 124, 566 P.2d 501, *quoting* Osborne on Mortgages at 555. Medford Pacific owned the Medford property subject to the

first and second mortgages, paid those mortgages, and cannot enforce any right against the mortgagor, Danmor. Danmor is entitled to summary judgment on Medford Pacific's claims to recover the sums that it paid to satisfy the existing mortgage balances after the expiration of the lease.

### CONCLUSION

The defendants' motion for partial summary judgment (# 39) is granted.